UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Alton CASSIDY, Appellant/Cross–
Appellee.

Nos. 92–3738, 92–3772.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1993.

Decided Oct. 4, 1993.

John A. Schlimgen, Sioux Falls, SD, for appellant/cross-appellee.

Thomas J. Wright, Asst. U.S. Atty., Sioux Falls, SD, for appellee/cross-appellant.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

The district court sentenced Alton Cassidy to thirty months in prison following his guilty plea to one count of possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Cassidy appeals and the government cross-appeals. Cassidy and the government both argue that the district court erred in its factual findings of relevant conduct and Cassidy also challenges the denial of a three-level reduction under the United States Sentencing Guidelines (Guidelines) for acceptance of responsibility. We affirm in part and reverse in part.

## I. BACKGROUND

Cassidy was arrested for distributing powder cocaine and crack cocaine after he made two sales of each to a confidential government informant who used pre-recorded bills to make the purchases. Shortly after his arrest, authorities searched Cassidy's apartment where they found additional cocaine, drug paraphernalia, and a portion of the pre-recorded bills. Based on this evidence, a grand jury returned a four-count indictment. Cassidy pleaded guilty to one count of distribution.

The Presentence Report (PSR) states that Cassidy was a member of a three-person drug ring which imported cocaine from Kansas City, Missouri, to Sioux Falls, South Dakota. According to the PSR, in addition to the amounts of cocaine recovered from Cassidy's apartment and from his sales to the confidential informant, Cassidy was responsible for relevant conduct involving 1.5 ounces of powder cocaine and 0.5 ounces of crack cocaine on one occasion, and one gram of powder cocaine on another occasion. The probation officer determined these quantities from an interview with Detective John Harris, a Minnehaha County Drug Task Force Officer. Detective Harris conducted the investigation leading to Cassidy's arrest and debriefed Judy Waldner, a state defendant with knowledge of Cassidy's conduct, as part of a plea agreement. Waldner told Detective Harris that she met with Cassidy and one other person in May 1992 to divide up two ounces of cocaine. At that time, Cassidy "cooked" 0.5 ounces of the powder cocaine into crack cocaine.[1] The PSR calculated Cassidy's base offense level using these amounts.

At his sentencing hearing, Cassidy objected to the PSR's recommendation that the court find an additional 1.5 ounces of powder cocaine and 0.5 ounces of crack cocaine for sentencing purposes.[2] He also argued that

---

1. Waldner also stated that Cassidy held one additional gram of cocaine for her while she finalized its sale in June 1992. Cassidy admitted at the sentencing hearing that he had held cocaine for Waldner. Sentencing Transcript at 53. However, the government did not include this amount in its final calculation of relevant conduct and

the district court did not use it in sentencing. Thus, consideration of the additional gram of cocaine is not before us.

2. Cassidy does not challenge the amounts of powder cocaine and crack cocaine included in the PSR for the four sales to the informant or the

his base offense level should be reduced by three levels for acceptance of responsibility under U.S.S.G. § 3E1.1 (Nov.1992). The government called Detective Harris and the probation officer who prepared the PSR as witnesses. Both government witnesses testified to the facts contained in the PSR as they were related to Detective Harris by Judy Waldner. Detective Harris also testified that Waldner said Cassidy left her house with three or four "rocks" of crack cocaine and one gram of powder cocaine on the day he was arrested. Cassidy was arrested after selling three "rocks" to the government informant and one gram of powder cocaine was found in his apartment during execution of the search warrant after his arrest. Cassidy objected to the government witnesses' testimony as hearsay—double hearsay in the probation officer's case.

Cassidy also took the stand in his own defense. He denied meeting Waldner and a third party to split two ounces of cocaine. He testified that he "cooked" some powder cocaine into crack for Waldner and a third party at Waldner's residence and was paid one gram of cocaine for his services. Sentencing Transcript at 47. While he was unsure of exact quantities, Cassidy testified that he cooked approximately a "[g]ram and a half or two grams maybe." *Id.* at 56. According to Cassidy, he did not see how much cocaine Waldner and her associate had.

The court found by a preponderance of the evidence that Cassidy was responsible for 1.5 ounces of powder cocaine and two grams of crack cocaine in addition to the undisputed amounts of powder cocaine and crack cocaine. The court also found that Cassidy met the requirements for a two-level reduction for acceptance of responsibility, but re-

jected Cassidy's request for a three-level reduction for entering into a plea agreement before the government was required to prepare for trial because Cassidy pleaded guilty before the effective date of the amendment which created that reduction. U.S.S.G. § 3E1.1(b)(2) (Nov.1992). The court determined the applicable sentencing range to be 27 to 33 months based on an offense level of 18 and criminal history category I and sentenced Cassidy to 30 months in prison.

## II. DISCUSSION

### A. Acceptance of Responsibility

■ Cassidy claims that he is entitled to an additional one-level reduction in his offense level under section 3E1.1(b)(2) for notifying the government of his intent to plead guilty before the government was forced to prepare for trial.[3] Before 1992, the Guidelines did not provide a specific reduction for defendants who saved government resources by pleading guilty early in the litigation process.[4] The amendment that Cassidy relies upon became effective on November 1, 1992. The district court refused to grant Cassidy an additional level reduction because he entered into his plea agreement before November 1, 1992. In the district court's view, the amendment could not be applied retroactively to actions taken before the effective date. Sentencing Transcript at 81.

■ We review the district court's interpretation of the Guidelines de novo. *United States v. Loftus*, 992 F.2d 793, 799 (8th Cir. 1993). Barring ex post facto concerns, the Guidelines in effect at the time of *sentencing* control. *Id.* Contrary to the district court's assertion, this case does not present a retro-

---

amount of cocaine later found in Cassidy's apartment.

3. U.S.S.G. § 3E1.1 (1992) provides for a one-level reduction in addition to the two-level reduction for acceptance of responsibility in subsection a:

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

. . . .

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

4. The application notes to section 3E1.1 provided that "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility" was one factor used to determine whether the defendant qualified for a two-level reduction. U.S.S.G. § 3E1.1, comment. (n. 1(g)) (Nov.1991).

activity problem. Section 3E1.1(b)(2)· was in full force and effect at the time Cassidy was sentenced.[5] The district court erred when it used the date Cassidy entered into his plea agreement to determine the applicable Guidelines. Since the district court did not consider whether Cassidy met the criteria for reduction of his offense level under section .3E1.1(b)(2), we reverse the district court's decision and remand for a determination of whether Cassidy is entitled·to an additional reduction.

## B. Relevant Conduct

Cassidy and the government both complain that the district court did not fully credit their respective witnesses' testimony regarding the quantity of drugs with which Cassidy was involved. In addition, Cassidy argues that the government witnesses' hearsay testimony was not sufficiently reliable to warrant consideration. Cassidy cites alleged inconsistencies in Waldner's information and argues that the district court implicitly found Waldner's statements unreliable because it did not use the full amount of powder cocaine and crack cocaine alleged by the government.

■ The Guidelines permit the use of hearsay evidence to resolve disputed facts "provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also United States v. Wise,* 976 F.2d 393, 402 (8th Cir.1992) (en banc) (upholding the constitutionality of the Guidelines' standard for consideration of hearsay evidence), *cert. denied,* —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993). The determination of whether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case, *Wise,* 976 F.2d at 403, and is committed to the sound discretion of the district court. *United States v. Harris,* 982 F.2d 317, 318–19 (8th Cir.1992).

■ The district court found that the Waldner's testimony, as presented through Detective Harris, warranted consideration. We agree. Waldner made her statements in the presence of her attorney while she was awaiting sentencing in state court. Detective Harris testified that much of what she said was consistent with facts he discovered through his own investigation. Waldner incriminated herself with her statements, and did not attempt to shift the entire blame to Cassidy. Waldner's statement that Cassidy left her apartment with a gram of cocaine on the day of his arrest was corroborated by the gram of cocaine found·during the search of Cassidy's apartment. Also, Cassidy's own testimony at sentencing corroborated much of what Waldner said. We have upheld the consideration of hearsay evidence under more tenuous and unclear circumstances than those here. *See Wise* 976 F.2d at 403–04 (two unnamed declarants were on pretrial diversion and the record was unclear regarding the circumstances of the diversions). We are satisfied that the court acted well within its discretion in considering Waldner's statements.

■ The government and Cassidy both complain that the district court credited only part of the evidence they presented. According to the government, the court should have found Cassidy responsible for the entire 1.5 ounces of powder cocaine and 0.5 ounces of crack cocaine reported in the PSR because the court specifically found Waldner's statements credible. Cassidy contends that the district court should have credited his testimony that he did not see the quantity of cocaine Waldner and her associate had and that he "cooked" only one to two grams of powder cocaine into crack for Waldner. Both parties point out alleged inconsistencies in the other side's testimony.

■ We review the district court's determination of the quantity of drugs relevant to Cassidy's offense for clear error.· *See* U.S.S.G. § 2D1.1, comment. (n. 12); *United States v. Funk,* 985 F.2d 391, 393–94 (8th Cir.1993). Contrary to the parties' assertions, credibility determinations are not an all-or-nothing proposition. It is the duty of the district court to weigh the evidence .and to base its decision on the preponderance of the evidence. *United States v. Wiley,* 997 F.2d 378, 385 (8th Cir.1993). There was

---

5. Cassidy was sentenced on November 17, 1992.

testimony at the sentencing hearing to support the district court's findings on both the amount of powder cocaine and the amount of crack cocaine relevant to Cassidy's offense.[6] After a thorough review of the record, we conclude that the district court's findings were not clearly erroneous.

## III. CONCLUSION

For the reasons discussed above, we affirm the district court's determination of the quantity of drugs relevant to Cassidy's offense of conviction and remand for a determination of whether Cassidy meets the criteria for an additional reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(2).

---

6. The district court's finding that Cassidy's involvement with cocaine at Waldner's residence was "part of the same course of conduct or common scheme or plan as the offense of conviction" under U.S.S.G. § 1B1.3(a)(2) is not clearly erroneous. *See Wiley,* 997 F.2d at 385. Cassidy's arguments to the contrary are meritless.