37 F.3d 1280
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nafez Anthony KARAM, also known as Tony Karam, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Antoun HARO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antoine Youssef EL HANI, also known as Tony El Hani,
Defendant-Appellant.
 Nos. 93-2603, 93-2604 and 93-3297.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1994.
Decided Oct. 7, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 21, 1994
 
 in No. 93-3297.
 Alan D. Margoles, St. Paul, MN, argued for Karam.
 Virginia G. Villa, Minneapolis, MN, argued, for Haro.
 Susan G. James, Montgomery, AL, argued, for El Hani.
 Jeffrey S. Paulsen, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.
 Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HANSEN, Circuit Judge.
 
 
 1
 Antoine Youssef El Hani ("Tony El Hani") was convicted by a jury of aiding and abetting the distribution of heroin in violation of 21 U.S.C Sec. 841(a)(1) and conspiracy to distribute heroin in violation of 21 U.S.C. Sec. 846. George Antoun Haro ("Haro") was convicted by a jury of distribution of heroin in violation of 21 U.S.C. Sec. 841(a)(1) and conspiracy to distribute heroin in violation of 21 U.S.C. Sec. 846. Nafez Anthony Karam ("Tony Karam") pleaded guilty to one count of possession with intent to distribute heroin and to one count of possession with intent to distribute cocaine, both in violation of 21 U.S.C. Sec. 841(a)(1). The appellants appeal from their convictions and sentences. We affirm the judgments of the district court.[1]
 
 I. BACKGROUND
 
 2
 Viewing the evidence in the light most favorable to the verdicts, a reasonable jury would have been justified in finding the following:
 
 
 3
 The appellants were members of a heroin distribution ring in the Minneapolis-St. Paul ("Twin Cities"), Minnesota, area. Tony El Hani, the chief operator of the ring, obtained large quantities of heroin to be distributed in the Twin Cities area. Raffoul El Hani, Tony El Hani's brother, was in charge of the day-to-day operations of the heroin ring until he fled the country shortly before he was indicted. Raffoul El Hani set up a local network of distributors who stored the heroin at stash houses and later delivered it to regular El Hani customers. The El Hanis paid the distributors a commission of $100-300 for each seven-gram ( 1/4 ounce) baggie of heroin they distributed.
 
 
 4
 One of these distributors was appellant George Haro. Haro confessed to law enforcement officers that Raffoul El Hani enlisted his services as a distributor for the organization. Under his arrangement with the El Hanis, Haro would sell heroin packages to El Hani customers and deliver the money to the El Hanis, who in turn paid him a $100 commission for each seven-gram package he sold. His profits as a six-month distributor for the El Hanis totaled approximately $14,000. At the time of his arrest, Haro possessed $1,400 in cash.
 
 
 5
 Haro was introduced to Mary Gaona, who was already a regular El Hani heroin customer. Gaona subsequently became a frequent purchaser from Haro. Gaona in turn enlisted the assistance of various "helpers" who distributed the heroin to local drug users. These "helpers" included Jason Johnson and Paul Bender.
 
 
 6
 Gaona implicated Tony El Hani as the key player in the distribution ring. After she was arrested, Gaona informed police that she acquired heroin on a daily basis from El Hani distributors, including Haro. Gaona told authorities that she originally met Tony El Hani at a party and shortly thereafter began purchasing cocaine from him. Tony El Hani also introduced her to another source named "Jerry," with whom she made other drug acquisitions.
 
 
 7
 Tony Karam was also a distributor for the El Hani organization. Karam's customers included Gaona. Karam's criminal activities were uncovered when Paul Bender was arrested for selling heroin to a federal agent in a controlled buy. Bender cooperated with law enforcement officers and told them that he was distributing the heroin for Gaona and that one of her sources was a Lebanese male named "Tony." Bender said he sometimes met "Tony" at the Sun Ray Shopping Center to pick up heroin for delivery to Gaona. Officers arrested Karam after a controlled buy with Bender. Karam told authorities he was recruited by Raffoul El Hani to work for the El Hani organization as a distributor. Evidence was also introduced at trial that on one occasion Karam acquired heroin from Raffoul El Hani and was told to make the check payable to Tony El Hani.
 
 
 8
 In addition to procuring heroin for local distribution, Tony El Hani supervised the storage of heroin at various "safe houses." Among these "safe houses" he used were his own residence and a cabin in his girlfriend's name. When agents searched both premises, they discovered various items of drug dealing paraphernalia containing traces of heroin.
 
 
 9
 Tony El Hani conducted several heroin transactions himself. He sold heroin to Joseph Lopez on several occasions and also to a relative named Rick George. He made payments in heroin (instead of cash) to Neil Rodrique for construction work. Tony El Hani became intensely involved in the day-to-day operations of the network after Raffoul El Hani left the country for Lebanon in 1992. When Tony El Hani was arrested, he possessed approximately $3,000 in cash.
 
 
 10
 On March 3, 1993, the government filed a seven-count superseding indictment in the District of Minnesota against Tony El Hani, Raffoul El Hani, Tony Karam, George Haro, Mary Gaona, and Jason Johnson. Tony El Hani was charged with aiding and abetting the distribution of heroin and conspiracy to distribute heroin. Karam was charged with possession with intent to distribute heroin, possession with intent to distribute cocaine and conspiracy to distribute heroin. The remaining defendants were charged with distribution of heroin along with conspiracy to distribute heroin.
 
 
 11
 Karam pleaded guilty to the two possession with intent to distribute charges. He was sentenced to 72 months of imprisonment after the district court granted the government's combined U.S.S.G. Sec. 5K1.1 and Title 18 U.S.C. Sec. 3553(e) motion for a downward departure. Tony El Hani and Haro went to trial and were convicted by the jury. Haro was found guilty of distribution of heroin and conspiracy to distribute heroin and was sentenced to two concurrent terms of 78 months. Tony El Hani was convicted of aiding and abetting the distribution of heroin and conspiracy to distribute heroin and sentenced to 240 months. All three appeal.
 
 II. DISCUSSION
 A. Karam
 
 12
 Karam challenges only his sentence. In a plea agreement, Karam and the government agreed that Karam's base-offense level was 26, that he was entitled to a three-level reduction for acceptance of responsibility, that the government would move for a downward departure below the ten-year statutory mandatory minimum[2] and recommend a sentence of 72 months of imprisonment, and that the remaining conspiracy charge would be dismissed.
 
 
 13
 Paragraphs 40 and 41 of the presentence report ("PSR") indicated that Karam should be held responsible for an additional 280 grams of heroin that he distributed during the conspiracy which increased the base-offense level two levels to 28. With the three level reduction for acceptance of responsibility, an adjusted offense level of 25 was proposed by the presentence investigator. The district court found the adjusted offense level to be 25 and Karam's criminal history category to be III. The district court observed that the identified guideline range was 70-87 months, but that there was an overriding 120-month statutory minimum. The court then granted the government's substantial assistance motion, departed below the statutory minimum, and imposed a sentence of 72 months, which is the sentence the parties agreed would be recommended by the government.
 
 
 14
 Karam argues that the district court erred in determining his sentence by considering drug quantities in the dismissed count of the indictment. He claims that absent the erroneously considered quantity of drugs, his adjusted offense level would be level 23 (instead of level 25) with a range of 57-71 months. However, the defendant was indisputably subject to the statutory mandatory minimum of ten years contained in 21 U.S.C. Sec. 841(b)(1)(B). That statute trumped any guideline determination based on quantity. Karam received a substantial downward departure below the otherwise applicable statutory mandatory minimum sentence. The extent of such a departure is unreviewable on appeal. See United States v. Albers, 961 F.2d 710, 712 (8th Cir.1992).
 
 
 15
 Karam's argument suffers from an even more fundamental defect. He made no objection to the presentence report's counting of the additional 280 grams of heroin. When asked by the district judge at the sentencing hearing, "Is there anything else you would like to say at all about that [PSI] report or anything else you would like to say at all about what is going to happen here this morning, either on behalf of your client or otherwise about the sentencing guidelines, whatever?", Karam's counsel replied, " * * * there is nothing with regards to the presentence investigation report that I would comment upon. That is an excellent report." (Karam Sentencing Tr. at 2) (emphasis added). When the court made its findings of fact it stated: "There being no objections to the factual statements contained in the presentence investigation report, the court does adopt those statements as its findings of fact." (Id. at 8). In the probation officer's addendum to the presentence report dated May 25, 1993, he reported to the court in advance of the sentencing hearing that "In a telephone conversation on May 24, 1993, counsel for the defendant indicated that he had no objections or proposed amendments to the presentence investigation report." Having failed to object to the PSR's quantity determination either before or at the sentencing hearing, Karam cannot be heard to complain now, absent plain error which is not present here. United States v. Kenyon, 7 F.3d 783, 786 (8th Cir.1993).
 
 
 16
 Even if Karam's departure sentence was reviewable, we have explicitly held that a sentencing court may consider, as relevant conduct under U.S.S.G. Sec. 1B1.3, the conduct charged in dismissed counts. United States v. Sheahan, 31 F.3d 595 (8th Cir.1994); United States v. Streeter, 907 F.2d 781, 791 (8th Cir.1990). See also United States v. Galloway, 976 F.2d 414, 425 (8th Cir.1992) (en banc) (sentencing court may consider conduct not contained in count of conviction for purposes of relevant conduct in imposing sentence).[3] Karam further argues that the plea agreement specifically contemplated that his initial offense level would be level 26. Karam fails to recognize, however, that the plea agreement specifically provided that he would be sentenced under the Sentencing Guidelines and the application of those Guidelines rests within the sole discretion of the district court. (Karam Addend. at 4, 6). The base-offense level noted in the plea agreement only governs the parties' agreed-to position with regard to sentencing; the agreement explicitly states that it is not binding on the court. We conclude that the court committed no error in applying the Guidelines by considering conduct from the dismissed conspiracy count in determining Karam's sentence, and that his sentence should be affirmed.
 
 B. Haro
 
 17
 Haro raises three issues on appeal. First, he argues that the indictment was impermissibly duplicitous. Second, he contends that the district court erred in calculating the drug quantity attributable to him. Finally, he asserts that the district court erroneously denied him a reduction for acceptance of responsibility.
 
 
 18
 1. Multiple Crimes in Count IV of Indictment
 
 
 19
 Haro contends that count IV of the superseding indictment was duplicitous because it charged more than one crime in a single count. Count IV charged Haro with distributing in excess of 100 grams of heroin from on or about January 1, 1992, through June 30, 1992.[4] The government alleged that Haro distributed seven grams of heroin a day, seven days a week, for approximately twenty weeks. As a result of the alleged duplicity, Haro requested dismissal of the indictment or, in the alternative, providing the jury with a special verdict form. The government argues that it consolidated Haro's drug transactions into a single count to avoid the confusion and unwieldiness that would attend setting out individual counts in the indictment for each of the roughly 140 transactions it alleged Haro made.
 
 
 20
 The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense. United States v. Saleh, 875 F.2d 535, 537 (6th Cir.1989). In the present case, assuming arguendo that Count IV of the indictment is duplicitous, we believe that the district court's instructions to the jury cured the duplicity. The district court instructed the jury that it "must unanimously agree upon at least one particular distribution that the defendant is alleged to have made." (Trial Tr., Vol. III at 127.) The jury was also instructed that "[i]f you cannot agree in that manner you must find the defendant not guilty of the offense charged in Count 4 of the indictment." (Id.) Courts have held that the risk of a nonunanimous verdict inherent in a duplicitous count may be cured when the jury is given a limiting instruction that requires it to unanimously find the defendant guilty with respect to at least one distinct act. See, e.g., United States v. Holley, 942 F.2d 916, 926-29 (5th Cir.1991), cert. denied, --- U.S. ----, 114 S.Ct. 77, 126 L.Ed.2d 45 (1993); United States v. North, 910 F.2d 843, 876-78 (D.C.Cir.1990) (per curiam), cert. denied, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); United States v. Peterson, 768 F.2d 64, 67 (2d Cir.), cert. denied, 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985). We find the rationale of these cases persuasive and adopt it as our own.
 
 
 21
 In the present case, the district court gave such a limiting instruction. The jury was instructed that it had to unanimously conclude that Haro made at least one particular transaction before it could find him guilty of the charge in Count IV of the indictment. We assume, as we must, that the jury followed these instructions. See Francis v. Franklin, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985). Any duplicity in Count IV of the indictment was cured by the court's limiting instruction.
 
 2. Sentencing Issues
 
 22
 Haro next argues that the district court erred in calculating the drug quantity attributable to him and in denying him a reduction for acceptance of responsibility. The district court based its drug quantity calculation on the testimony of co-defendant Jason Johnson. Johnson testified that he and co-defendant Mary Gaona picked up seven grams of heroin on a daily basis from Haro for approximately twenty weeks. Based on this testimony, the district court determined that the appropriate quantity of heroin attributable to Haro to be 980 grams.
 
 
 23
 A district court's drug quantity determination will not be overturned unless clearly erroneous, and its findings as to the credibility of a witness in making that determination are virtually unreviewable on appeal. United States v. Adipietro, 983 F.2d 1468, 1472 (8th Cir.1993) (quotes and citations omitted). The district court's determination regarding drug quantity was not clearly erroneous, and we decline to review its assessment concerning the credibility of Jason Johnson, a person it had the opportunity at trial to observe closely.
 
 
 24
 Haro also contends that he is entitled to an acceptance of responsibility reduction under U.S.S.G. Sec. 3E1.1. The district court concluded that this was not one of the rare situations described in U.S.S.G. Sec. 3E1.1, comment. (n. 2) when the reduction is appropriate for a defendant who has gone to trial. The district court also declined to grant the reduction on the basis that Haro "refused to discuss his criminal conduct with the probation officer, an indication that he does not fully accept responsibility for his action." (Haro Addend. at A-5).
 
 
 25
 We review a district court's findings of fact with respect to a denial of a motion for an acceptance of responsibility reduction under the clearly erroneous standard. United States v. Miller, 951 F.2d 164 (8th Cir.1991). The acceptance of responsibility reduction is generally "not intended to apply to a defendant who puts the government to its burden of proof at trial...." U.S.S.G. Sec. 3E1.1, comment. (n. 2).
 
 
 26
 In the present case, Haro put the government to its proof by going to trial. We agree with the district court's assessment that this is not one of the rare cases described in Sec. 3E1.1, comment. (n. 2), and conclude that the district court did not commit any error in denying Haro an acceptance of responsibility reduction.
 
 C. El Hani
 
 27
 Tony El Hani raises six issues on appeal. He argues that: (1) the government produced insufficient evidence to convict him of aiding and abetting the distribution of heroin as well as conspiracy to distribute heroin; (2) the district court erred in denying his motion to sever his trial from co-defendant Haro's trial; (3) the district court erred in admitting character evidence against him; (4) the district court erred in allowing evidence of his prior conviction; (5) the government committed prosecutorial misconduct in closing argument; and (6) the district court committed various errors in conjunction with his sentence. We address each of these arguments in turn.
 
 1. Sufficiency of the Evidence
 
 28
 Tony El Hani contends that insufficient evidence exists to sustain his convictions for aiding and abetting the distribution of heroin and conspiracy to distribute heroin. In addressing this claim, we examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences and we may reverse only if we can conclude that a reasonable factfinder could not have found El Hani's guilt beyond a reasonable doubt. United States v. Zerba, 21 F.3d 250, 251-52 (8th Cir.1994).
 
 
 29
 The government presented overwhelming evidence of Tony El Hani's guilt on both the aiding and abetting and conspiracy counts. Without fully repeating all of the facts outlined above, El Hani was the leader of an organization that obtained and distributed large quantities of heroin in the Twin Cities area. He maintained several safe houses for the storage of the heroin. He personally distributed quantities of heroin to Neil Rodrique and Rick George. Finally, after his brother Raffoul left the country, Tony El Hani took over the day-to-day operations of the distribution ring. Viewing the evidence in the light most favorable to the government, we conclude that overwhelming evidence exists in the record to sustain El Hani's convictions on both the aiding and abetting count as well as the conspiracy count.
 
 2. Severance
 
 30
 Tony El Hani asserts that the district court erred in denying his motion to sever his trial because of the admission at trial of the confession of codefendant Haro, which El Hani argues violated Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Supreme Court's holding in Bruton prohibits the admission of an out-of-court confession by a nontestifying codefendant implicating another defendant by name in the crime. Id. at 126, 88 S.Ct. at 1622. In the present case, Officer Tom Billings of the Minneapolis Police Department testified that Haro confessed that Raffoul El Hani recruited him to sell heroin. Tony El Hani was not mentioned. Therefore, the Bruton standard was not violated with regard to the admission of Haro's confession.
 
 
 31
 Officer Billings admitted, under cross-examination by El Hani, that Karam had mentioned Tony El Hani by name when Karam made a confession to law enforcement officers. However, the Bruton standard is inapplicable when the confessing witness testifies and is available for cross-examination. United States v. Coco, 926 F.2d 759, 761 (8th Cir.1991). Here the Bruton rule does not apply because Karam was the next witness to testify and El Hani in fact cross-examined him. Moreover, Tony El Hani elicited the alleged Bruton statements during cross-examination of Officer Billings. Bruton is not violated when the defendant elicits the incriminating out-of-court statements. See United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.1992) ("a defendant who elicits a statement that may be violative of Bruton may not later claim error based on the admission of that statement").
 
 3. Character Evidence
 
 32
 Tony El Hani contends that the district court erred in allowing certain testimony by Neil Rodrique that constituted inadmissible character evidence pursuant to Federal Rule of Evidence 404(b). Rodrique testified that Tony El Hani paid him with heroin in exchange for certain construction work that he did. Rodrique also testified that El Hani had been in drug rehabilitation.
 
 
 33
 Rodrique's testimony concerning the heroin payment relates to conduct that is charged in the instant indictment and, therefore, is not 404(b) evidence. See United States v. Stephenson, 924 F.2d 753, 763 (8th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) (rule 404(b) inapplicable when disputed evidence relevant to the charged crime itself). The testimony that El Hani had been in drug rehabilitation was objected to, stricken from the record, and the district court gave a curative instruction which required the jury to disregard the evidence. We assume the jury followed the court's curative instructions and disregarded the evidence. See Parker v. Randolph, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979). Any prejudice that arose when the jury heard this testimony was cured by the court's subsequent instruction.
 
 
 34
 4. Admission of El Hani's Prior Drug Conviction
 
 
 35
 Tony El Hani next argues that the district court erred in allowing testimony concerning a prior drug conviction. The government called Rick George to testify about several heroin transactions with El Hani. On cross-examination, El Hani's counsel elicited from George that George did not know whether El Hani dealt drugs or not but did know that El Hani was meeting with his "PO" (probation officer) every week. Prior to redirect examination, the prosecutor requested to inquire whether George knew that El Hani had been convicted of a heroin offense. The district court ruled that the defendant had "opened the door" and allowed the government to make the requested inquiry. On redirect, the prosecutor asked George the identity of the "PO," as well as El Hani's purpose for meeting with him. George responded that the "PO" was El Hani's probation officer and the reason El Hani was meeting with him was because of a prior heroin conviction.
 
 
 36
 Assuming without deciding that this testimony was erroneously admitted, we believe that its admission was harmless error. United States v. DeAngelo, 13 F.3d 1228, 1233 (8th Cir.1994). This testimony was brief and no further reference was made to El Hani's conviction for the remainder of the trial. Moreover, the other evidence against El Hani was overwhelming. Any error by the district judge in allowing this evidence was harmless and therefore does not provide a basis for reversing El Hani's conviction.
 
 
 37
 5. Prosecutor's Statements During Closing Argument
 
 
 38
 Tony El Hani complains that the prosecutor committed prosecutorial misconduct by misstating the record several times during closing arguments and consequently put evidence before the jury that was not in the record. The court reporter's transcript shows the following:
 
 
 39
 Mr. Paulsen (Prosecutor): * * * Tony El Hani's testimony showed, was getting ounces, ounces of heroin for something less than $5,000--
 
 
 40
 Mr. Strauss (Defense Counsel): Objection Your Honor, misstatement of the evidence. There was no such evidence in this case.
 
 
 41
 (Trial Tr., Vol. III at 45). The government claims in its brief that because Tony El Hani did not testify in the case the transcript is in error and that the statement the prosecutor actually made was: "Tony El Hani, the testimony showed, was getting ounces, ounces of heroin, for something less than $5,000--." Whatever the statement was, the district court overruled the objection and told the jury that its recollection of the evidence would control. When the prosecutor resumed his argument, his immediate statements made clear that he was not relying on non-existent testimony but rather on the testimony of one Joe Lopez. El Hani later took issue with the prosecutor's statement that during the search of El Hani's cabin, a Seal-A-Meal machine was seized with "all the traces of heroin on it." (Trial Tr., Vol. III at 49). Finally, El Hani objected to several references the prosecutor made that El Hani had received pound quantities of heroin. (Trial Tr., Vol. III at 49-51).
 
 
 42
 In evaluating allegations of prosecutorial misconduct alleging improper statements during closing argument, this court asks: (1) whether the prosecutor's comments were improper; and (2) if so, did such remarks prejudicially affect the defendant's substantial rights in obtaining a fair trial. United States v. Johnson, 968 F.2d 768, 770 (8th Cir.1992). Prosecutors, however, are entitled to argue reasonable inferences to be drawn from the facts in evidence during closing arguments. United States v. Boyce, 797 F.2d 691, 694 (8th Cir.1986).
 
 
 43
 After carefully reviewing the record, we find no error. The first alleged misstatement (if in fact made) was corrected for the jury. Each of the remaining objected-to statements was a fair inference that could be drawn from the evidence and therefore was not improper. Moreover, the district court stated on the record, out of the presence of the jury, that the prosecutor probably was drawing a fair inference from the record concerning the statements with which El Hani took issue. (Trial Tr., Vol. III at 51). Further, the district court gave several cautionary instructions to the jury that it was their recollection of the evidence, not the lawyers' arguments, that should control their decisions concerning the evidence. Assuming the prosecutor did misquote the evidence, which we are not fully convinced to be the case, these instructions cured any prejudice. Therefore, El Hani's contention of prosecutorial misconduct fails.
 
 6. Sentencing Issues
 
 44
 Finally, El Hani asserts that the district court made several errors in determining his mandatory minimum twenty-year sentence. El Hani first takes issue with the district court's determination that he had been convicted of the statutorily required prior felony involving drugs. Section 841(b)(1)(A) requires the imposition of a twenty-year mandatory minimum sentence upon any individual who is convicted of distributing in excess of one kilogram of heroin and who possesses "a prior conviction for a drug felony offense." 21 U.S.C. Sec. 841(b)(1)(A) (1988). El Hani acknowledges his prior felony conviction under 21 U.S.C. Sec. 843(b) for using a communication facility to facilitate the intentional and unlawful importation of controlled substances. However, he argues that his prior conviction does not fall within the parameters of "a prior conviction for a drug felony offense" within the meaning of Sec. 841(b)(1)(A).
 
 
 45
 "Felony drug offense" is defined in Sec. 841(b)(1)(A) as "an offense that is a felony under any provision of this subchapter...." Id. Both El Hani's instant offense and his prior offense are found in the same Subchapter and Part of Title 21. Therefore, the plain language of Sec. 841(b)(1)(A) requires imposition of the twenty-year mandatory minimum sentence for El Hani's current conviction under that section.
 
 
 46
 El Hani next contends that the district court erred in determining that the amount of heroin attributable to him exceeded one kilogram. We review the district court's determination of drug quantity under the clearly erroneous standard. United States v. Olderbak, 961 F.2d 756, 763 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992). Because one of the counts of the indictment charged Tony El Hani with conspiracy, he "may be held accountable for the conduct of others in furtherance of the conspiracy as long as it was reasonably foreseeable to [him]." U.S.S.G. Sec. 1B1.3(a)(1)(B). Given the evidence introduced at trial, the district court's calculation concerning El Hani's drug quantity was not clearly erroneous.
 
 
 47
 Finally, El Hani argues that the district court erred in assessing a three-level increase under U.S.S.G Sec. 3B1.1 for his role in the offense. The additional three levels increased his adjusted offense level from level 32 to level 35 with a resulting sentencing range of 210-262 months. However, El Hani was subject to the mandatory twenty-year minimum sentence contained in 21 U.S.C. Sec. 841(b)(1)(A) because he had the prior felony drug conviction and was involved in more than a kilogram of heroin. He was sentenced to the mandatory minimum sentence. Consequently the role in the offense adjustment determination had no impact on his sentence and any error in that determination cannot be the basis of an appeal. Our independent review convinces us however, that the adjustment was correctly applied.
 
 III. CONCLUSION
 
 48
 For the reasons enumerated above, we affirm the judgments of the district court as to each defendant.
 
 
 
 [1]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota
 
 
 [2]
 The mandatory minimum ten-year sentence contained in 21 U.S.C. Sec. 841(b)(1)(B) is applicable to count II of the indictment against Karam because of the quantity of heroin to which Karam admitted in his plea agreement and the fact that he has a prior felony drug conviction
 
 
 [3]
 Karam asks us to adopt the rationale applied by a panel of the Ninth Circuit in United States v. Restrepo, 883 F.2d 781 (9th Cir.1989). We decline to do so not only because it is contrary to our en banc case law but also because the Restrepo panel opinion relied on by the defendant was later vacated by the panel itself, see United States v. Restrepo, 896 F.2d 1228 (9th Cir.1990), the panel issued a subsequent opinion which is contrary to the defendant's position, see United States v. Restrepo, 903 F.2d 648 (9th Cir.1990), and the Ninth Circuit en banc affirmed the second panel opinion. See United States v. Restrepo, 946 F.2d 654 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992)
 
 
 [4]
 Specifically, count IV of the superseding indictment states:
 From on or about January 1, 1992, through on or about June 30, 1992, in the State and District of Minnesota, the defendant,
 GEORGE ANTOUN HARO,
 knowingly and intentionally distributed in excess of 100 grams of a mixture or substance containing a detectable amount of heroin, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).