UNITED STATES of America, Appellee,

v.

Edward Jerico SMITH, also known
as Rico Smith, Appellant.

UNITED STATES of America, Appellee,

v.

Harold McMILLAN, Appellant.

UNITED STATES of America, Appellee,

v.

Cassell Ali BOBO, also known
as Louis Taylor, Appellant.

UNITED STATES of America, Appellee,

v.

Courtney Bernard GARDNER, Appellant.

UNITED STATES of America, Appellee,

v.

Donald Cornelius GARDNER, Appellant.

UNITED STATES of America, Appellee,

v.

Dexter Darron CARR, also known as
Darron Dexter Carr, also known
as Dex, Appellant.

Nos. 93–3610, 93–4006, 93–4007, 94–
1621, 94–1623 and 94–1751.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1994.

Decided Jan. 11, 1995.

**364**

Barry Voss, Minneapolis, MN, argued for appellant Edward Jerico Smith in No. 93–3610MN.

Michael William McNabb, Burnsville, MN, argued for appellant Harold McMillan in No. 93–4006MN.

Carol Grant, Minneapolis, MN, argued (Marc G. Kurzman, on the brief), for appellant Cassell Ali Bobo in No. 93–4007MN.

John G. Dillon, Minneapolis, MN, argued for appellant Courtney Bernard Gardner in No. 94–1621MN.

Joel C. Golden, Minneapolis, MN, argued for appellant Donald Cornelius Gardner in No. 94–1623MN.

Faison T. Sessoms, Minneapolis, MN, argued for appellant Dexter Darron Carr in No. 94–1751MN.

Denise Ducharme Reilly, Asst. U.S. Atty., Minneapolis, MN, argued for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Defendants appeal from their various drug, money laundering and drug conspiracy, and firearm convictions, asserting numerous errors. We affirm as to all defendants except Cassell Bobo and Harold McMillan, with respect to whom we reverse and remand for resentencing in accordance with this opinion.

## I.

In June 1992 a federal grand jury returned an indictment charging Cassell Bobo with three counts of drug distribution and one count of conspiracy to distribute drugs. On August 20, 1992, the grand jury returned a superseding indictment alleging 22 counts of drug related offenses, implicating eighteen defendants, including Bobo. The six defendants who now appeal were tried jointly and were found guilty on February 19, 1993.

All the defendants were convicted of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 21 U.S.C. § 846. Three of the defendants were found guilty of additional charges related to the conspiracy. Dexter Darron Carr was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count each of knowing and intentional distribution of cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). McMillan was convicted of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Bobo was convicted of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(1)(A), and 371; one count each of aiding and abetting the distribution of cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and two counts of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

The following facts were established at trial. In the mid–1980s, while a number of the defendants were still in high school and junior high school, Morris Botiz [1] began selling cocaine in Minnesota with the aid of numerous drug couriers. McMillan helped Botiz and Derrick Edmund rent an apartment and get established in Minnesota and was involved throughout the duration of the conspiracy. The remainder of the defendants in this proceeding began dealing with the Botiz faction sometime in the late 1980s or early 1990s. Bobo and Travis Granger operated a store on Lake Street in Minneapolis called Today's Fashion & Music. Wiretap and video surveillance evidence and drug notes discovered during garbage searches at Today's Fashion & Music revealed that much of the drug related activity was coordinated from this store. Searches of

---

**1.** Botiz was charged in the superseding indictment, but remained a fugitive at the time of trial.

the various defendants' apartments also yielded numerous triple-beam scales that are used for weighing out drugs, drug notes, pagers and cellular phone bills, and photographs showing the defendants' association with one another. Defendants Donald Cornelius Gardner, Courtney Bernard Gardner, and Carr were involved in the trafficking and distribution of cocaine and cocaine base throughout 1992 when Bobo's store was wiretapped. Defendant Edward Jerico Smith's involvement in the conspiracy with Bobo ran through much of 1991. We address each defendant's asserted errors in turn.

## II.

A. Donald Cornelius Gardner

Donald Gardner was sentenced to a term of 128 months for his role in the conspiracy. He asserts on appeal that the district court violated his Sixth Amendment right to confrontation by unduly restricting the scope of his cross-examination of government witness James Page. Donald Gardner also contends that the evidence was insufficient to support his conviction and that the district court erred in its determination of the amount of drugs attributable to him.

■ Although it is true that counsel cannot expect a co-defendant's attorney to protect his client's rights, the district court did not abuse its discretion in disallowing duplicative cross-examination by Donald Gardner's attorney. *See United States v. Wilson,* 787 F.2d 375, 386–87 (8th Cir.) (abuse of discretion determined by "focus[ing] on the nexus between the information sought and the purpose of the cross-examination, the relevancy of the information, and the availability of other opportunities to elicit the information"), *cert. denied,* 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129, *and cert. denied,* 479 U.S. 865, 107 S.Ct. 223, 93 L.Ed.2d 151 (1986). Having reviewed the transcript, we find that Donald Gardner's right to confrontation was adequately protected by the testimony elicited. The court allowed the attorneys for Donald and Courtney Gardner to pose numerous questions about Page's status as a career offender, the penalties he faced and his plea agreement, his possible further

reduction in sentence based on his testimony, and his desire to get out of jail as soon as possible. The district court's refusal to allow more of the same did not deny defense counsel the opportunity to expose facts from which the jury "could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *see United States v. Campbell,* 845 F.2d 782, 787–88 (8th Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988).

"When considering a sufficiency-of-the-evidence claim, we view the evidence in the light most favorable to the government, giving it the benefit of all favorable inferences." *United States v. Maxwell,* 25 F.3d 1389, 1395 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994); *see United States v. Karam,* 37 F.3d 1280, 1287 (8th Cir.1994); *United States v. Lucht,* 18 F.3d 541, 552 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). "Once a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." *United States v. Ivey,* 915 F.2d 380, 384 (8th Cir.1990). Reversal is appropriate only if "we conclude that a reasonable fact finder could not have found the defendant[ ] guilty beyond a reasonable doubt." *United States v. Quintanilla,* 25 F.3d 694, 699 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994).

■ Having reviewed the record, we conclude that a reasonable jury could have found beyond a reasonable doubt that a conspiracy existed and that Donald Gardner "knowingly became a part of the conspiracy." *United States v. Rogers,* 982 F.2d 1241, 1244 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993). Page's testimony, the substantial wiretap evidence of Donald Gardner's drug-related conversations with Bobo and others, and the conversations of others implicating Donald Gardner show that Donald Gardner was undoubtedly aware of and involved in the drug conspiracy.

■ A district court's determination of drug quantity is reviewed for clear error. *Karam,* 37 F.3d at 1286; *Maxwell,* 25 F.3d

at 1397; *United States v. Cassidy,* 6 F.3d 554, 557 (8th Cir.1993). We find no such error in the district court's attributing Donald Gardner with the sale of two ounces of crack to Page, despite Gardner's assertion that "the crack was given to Page by another individual," because Page testified that Gardner located the source and was present at the time of the transaction. *See* U.S.S.G. § 1B1.3(a)(1)(A) (relevant conduct includes aiding and abetting). Nor did the district court clearly err in attributing a kilogram of cocaine powder to Donald Gardner based on money the evidence showed he transferred to Bobo and on Carr's testimony at the evidentiary hearing. The district court properly held Donald Gardner responsible for the drug amounts involved in the conspiracy that were either known to him or reasonably foreseeable by him. U.S.S.G. § 1B1.3(a)(1)(B); *Karam,* 37 F.3d at 1289.

### B. Dexter Darron Carr

■ Carr was convicted of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine and cocaine base, distribution of cocaine and cocaine base, and of being a felon in possession of a firearm. He was sentenced to a term of 145 months. He assigns as error the district court's determination that he was responsible for more than five kilograms of powder cocaine. Carr contends that the evidence shows his responsibility for only 12.07 grams of crack, which would give him a base offense level of 26, rather than the level 32 assigned by the district court.

The evidence showed that Carr was intimately aware of and involved in the drug conspiracy. Wiretap evidence of drug related transactions, notes detailing drug transactions, and the triplebeam scale with traces of cocaine on it that was found in Carr's apartment clearly show that even if Carr was not directly responsible for distributing the specific amounts of drugs assigned to him, he was certainly aware of the extent of the conspiracy and the amounts assigned to him were reasonably foreseeable by him. *See Karam,* 37 F.3d at 1289. The Presentence Investigation Report attributed between 50 and 150 grams of crack to Carr. The district court found him responsible for between five and fifteen kilograms of cocaine powder. Either finding results in a base offense level of 32. The district court's finding that Carr should be held responsible for between five and fifteen kilograms of cocaine because he "was involved in the distribution of large amounts of both crack and powder cocaine," Sentencing Mem. at 1, does not constitute clear error. *See Cassidy,* 6 F.3d at 557–58.

### C. Courtney Bernard Gardner

■ Courtney Gardner was sentenced to a term of 151 months for his role in the conspiracy. He argues that the evidence showed that he was only involved in the sale of eleven ounces of cocaine.

The district court's determination that Courtney Gardner should be held responsible for at least five kilograms of cocaine does not constitute clear error. Drug notes implicating Courtney Gardner were found at his residence and at Bobo's store, and he was also implicated through wiretap evidence. Carr testified at an evidentiary hearing prior to sentencing that Courtney Gardner showed him how to most profitably sell drugs by selling them in smaller quantities. Carr also testified that Courtney Gardner sold another ounce of crack and was responsible for at least 1.5 kilograms of cocaine powder. We find that the conduct of Courtney Gardner's co-conspirators was reasonably foreseeable even if the conspiracy spanned beyond his "actual participation." *United States v. Jones,* 965 F.2d 1507, 1517 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 346, 121 L.Ed.2d 261, *and cert. denied,* —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992), *and cert. denied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); *see* U.S.S.G. § 1B1.3. The evidence showed that he was actively and directly involved in a number of drug transactions and was aware of many more within the scope of the conspiracy.

### D. Harold McMillan

McMillan was convicted of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine and cocaine base, and aiding and abetting the distribution of cocaine. He was sentenced to

a term of 282 months. He challenges the attribution of five to fifteen kilograms of cocaine to him, as well as a 2 level increase under U.S.S.G. § 3B1.1(c) for his role in the conspiracy.

We find the district court's determination of the quantity of drugs attributable to McMillan not clearly erroneous. *See Cassidy,* 6 F.3d at 557. The quantity for which McMillan was substantively convicted of selling, coupled with the wiretap evidence introduced at trial, conclusively establishes McMillan's involvement with the conspiracy. Although different interpretations of the monetary amounts handled by McMillan are possible based on this evidence, we cannot say that the district court's finding that McMillan was responsible for transferring approximately $150,000 to Botiz is clearly erroneous. *See* U.S.S.G. § 2D1.1, comment. (n. 12) (noting various considerations in determining drug quantity). The government satisfied its "burden of proving drug quantity by a preponderance of the evidence," and thus McMillan's base offense level was properly assessed at 32. *United States v. Simmons,* 964 F.2d 763, 771 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992); *see Maxwell,* 25 F.3d at 1397.

■ Section 3B1.1 of the sentencing guidelines provides upward adjustments to the offense level based upon the defendant's aggravating role in the offense. It provides that:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The district court determined "that [McMillan] was an organizer of criminal activity within the meaning of section 3B1.1(c)," Sentencing Mem. at 3, and enhanced his sentence by two levels. Because the overall conspiracy involved more than five participants, however, the district court was limited to assigning McMillan "a four-level enhancement under § 3B1.1(a)." *United States v. Kirkeby,* 11 F.3d 777, 779 (8th Cir.1993).

Unlike in *Kirkeby,* the government here does not pursue a further enhancement of McMillan's sentence based on the district court's finding that he warranted an enhancement. Rather, the government argues that the two-level enhancement is appropriate because McMillan's managerial role within the overall conspiracy did not encompass more than five participants. This misreads the guideline, which states that a finding of significant involvement in a criminal activity that "involved five or more participants" should result in either a three or four-level enhancement, U.S.S.G §§ 3B1.1(a), (b); *see Kirkeby,* 11 F.3d at 779, and does not provide for a delineation of degrees of aggravating roles within an extensive conspiracy other than those found in subsections (a) and (b). The government's argument also ignores application note 2 of section 3B1.1, which explicitly states that the appropriate enhancement applies if the defendant was an organizer of "one or more other participants." U.S.S.G. § 3B1.1, comment. (n. 2). We cannot circumvent the plain meaning of the guideline and impose a flexibility that is not contemplated by its terms. Rigidity within the sentencing guidelines is an issue for the sentencing commission and Congress to resolve, not for the courts to ignore.

The district court's determination regarding McMillan's role in this offense is unambiguous. The district court specifically found "that the enhancement for role as a leader is appropriate here. Mr. McMillan was the contact originally with Mr. Botiz. He recruited others here to be involved. He conferred frequently with Mr. Bobo about supply and other matters." Sentencing Tr. at 10. Here, much as in *Kirkeby,* "the ordinary rules of issue preclusion" dictate that the district court apply the appropriate four-level enhancement as a result of that determina-

tion. 11 F.3d at 779. Because the finding that McMillan was an organizer or leader warranting a sentencing enhancement is not clearly erroneous, *see United States v. Dijan,* 37 F.3d 398, 403–04 (8th Cir.1994), we remand to the district court for resentencing commensurate with that finding.

### E. Edward Jerico Smith

Smith was convicted of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine and cocaine base. He was sentenced to a term of 120 months because he faced a mandatory minimum term under 21 U.S.C. § 841(b)(1)(B)(iii). He asserts that the evidence was insufficient to link him to the conspiracy, that the district court abused its discretion in admitting evidence of an earlier drug distribution conviction, and that the district court mistakenly determined his base offense level to be 28.

■ We find the evidence sufficient to support a finding of Smith's guilt. Tanya McCrimmon testified that she purchased crack from "Rico" Smith between the summer of 1990 and the summer of 1991. She also testified that Smith sold drugs at the same location where she did her drug dealing and that Smith's source was "Sal" (Cassell Bobo). Lamont Frenchwood corroborated this testimony as to Smith's source, and officer Rice's testimony corroborated McCrimmon's testimony that Smith was selling crack. It is the province of the jury to determine the credibility of the witnesses, *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992), and we find no reason to invade the jury's province in this instance. Telephone traffic and a drug note found during a garbage search at Today's Fashion & Music also implicated Smith in the conspiracy. *See United States v. Schubel,* 912 F.2d 952, 956 (8th Cir.1990) (noting that circumstantial evidence may suffice to support a jury verdict); *see also United States v. O'Connell,* 841 F.2d 1408, 1424 (8th Cir.) (upholding drug conspiracy conviction), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), *and cert. de-*

*nied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989).

■ We also find that the district court did not abuse its discretion in allowing officer Thomas Rice to testify about an October 1991 undercover purchase of cocaine base involving Smith. Although the specific act was not alleged in the superseding indictment, that is not necessary to link the particular sale to the overall conspiracy. *See United States v. McMurray,* 34 F.3d 1405, 1411–12 (8th Cir.1994). Additionally, the testimony was admissible under Fed.R.Evid. 404(b) because the conduct in question was relevant, highly probative, similar in kind and close in time to the charged conspiracy, and proved by a preponderance of the evidence. *See United States v. Ballew,* 40 F.3d 936, 941 (8th Cir.1994); *United States v. Jones,* 990 F.2d 1047, 1050 (8th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994). Smith has failed to show that the evidence had no bearing on any of the issues presented in the case. *United States v. Culver,* 929 F.2d 389, 391 (8th Cir.1991).

■ Nor did the district court commit clear error in determining that Smith was responsible for at least five grams of crack cocaine. The evidence adduced at trial sufficed to support such a finding. At his arrest, Smith threw a plastic bag containing 5.2 grams of crack to the ground. Tanya McCrimmon also testified as to Smith's responsibility for three grams of crack, and Faith Brown's grand jury testimony revealed even more drug transactions involving Rico Smith. We need not reach the propriety of the district court's determination that Smith should be held responsible for thirty grams of crack cocaine because the five grams attributable through officer Rice's testimony, coupled with an unchallenged prior drug conviction, sufficed to invoke the mandatory minimum sentence of 120 months. *See* 21 U.S.C. § 841(b)(1)(B)(iii).

### F. Cassell Ali Bobo

Bobo was convicted of four substantive drug counts, as well as of money laundering and drug conspiracy, and was sentenced to 282 months. Bobo challenges the sufficiency

of the evidence to sustain his conviction on two counts and asserts that he was improperly denied credit for his acceptance of responsibility in the conspiracy. Bobo also asks for a new trial or resentencing based on the district court's reliance on the now-discredited testimony of Lamar Frenchwood in determining his sentence.

■ We find the evidence sufficient to uphold Bobo's convictions for distribution of cocaine base on December 11, 1990 (Count IV), and aiding and abetting the distribution of cocaine base on January 15, 1991 (Count V). A police informant called Bobo's pager, which was acquired under the alias Louis Taylor, and subsequently purchased approximately one ounce of crack from a man (later confirmed to be Bobo) on December 11, 1990. About one month later the same police informant purchased two more ounces of crack from Bobo, paying $1300 at that time and another $1300 three days later to Bobo's partner at Today's Fashion & Music, Travis Granger. Surveillance officers positively identified the seller of the crack as Cassell Bobo. In light of these facts, we find substantial evidence to support Bobo's convictions on counts IV and V.

■ Following trial, the government discovered that one of its witnesses against Bobo, Lamar Frenchwood, had lied in his testimony against Bobo. Subsequently, Bobo's conviction on count VI (aiding and abetting the distribution of cocaine and cocaine base on November 20, 1991) was vacated. The district court also relied on Frenchwood's testimony in determining the amount of drugs attributable to Bobo for sentencing purposes. In light of the fact that this testimony has now been discredited, we vacate Bobo's sentence and remand the case to the district court for a determination of whether a reduction in Bobo's offense level is warranted and, if so, for resentencing in accordance with that determination.

Because the government's use of the tainted testimony did not likely affect the jury's judgment as to the remaining counts, however, Bobo does not warrant a new trial. *See United States v. Tierney*, 947 F.2d 854, 860–61 (8th Cir.1991); *United States v. Begnaud*, 848 F.2d 111, 113–15 (8th Cir.1988). There

was ample evidence apart from Frenchwood's testimony to implicate Bobo in the other counts arising from this conspiracy and attribute responsibility for a significant amount of drugs. There is no doubt that Bobo was a major player in this conspiracy. Prior to his arrest, undercover police officers arranged multiple drug purchases in which Bobo was involved. Drug transactions were conducted through his store, and he choreographed drug traffic throughout his involvement in the conspiracy.

The district court based its refusal to grant Bobo a two level decrease for acceptance of responsibility on his unwillingness to "admit his role in the conspiracy charged in Count I." Sentencing Mem. at 5. We remand on this issue as well for a determination of whether, in light of the discredited Frenchwood testimony, Bobo sufficiently accepted responsibility for his role in the conspiracy to warrant a reduction. Our remand on this issue should not be construed as suggesting that such a reduction is warranted, but only as allowing the district court to revisit the issue in light of the now-discredited Frenchwood testimony.

The judgments against the defendants are affirmed. The sentences imposed upon Bobo and McMillan are vacated, and the case is remanded to the district court for further proceedings as to those defendants in accordance with the views set forth in this opinion.

