49 F.3d 378
 UNITED STATES of America, Appellee,
v.
William RICE, also known as Touche, Appellant.
UNITED STATES of America, Appellee,
v.
Willie Chavez BLACKSTONE, Appellant.
UNITED STATES of America, Appellee,
v.
Terrell WASHINGTON, Appellant.
 Nos. 94-1475, 94-1483 and 94-1728.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1994.
Decided Feb. 22, 1995.
 
 Carter Collins Law, St. Louis, MO, argued, for appellant Rice.
 John F. Garvey, St. Louis, MO, argued, for appellant Blackstone.
 James R. Wyrsch, St. Louis, MO, argued, for appellant Washington.
 Howard J. Marcus, St. Louis, MO, argued, for appellee.
 Before MAGILL, Circuit Judge, BEAM, Circuit Judge, and PIERSOL,* District Judge.
 BEAM, Circuit Judge.
 
 
 1
 After a jury trial, Terrell Washington, Willie Chavez Blackstone, and William Rice, a/k/a "Touche," were convicted of various conspiracy and drug-related charges. On appeal, all three defendants challenge the district court's[1] determination of their offense level under the Sentencing Guidelines. In addition, Rice challenges the court's refusal to reduce his sentence as a minor participant in the conspiracy. Washington raises several evidentiary objections to his convictions. We affirm.
 
 I. BACKGROUND
 
 2
 Viewing the evidence in the light most favorable to the government, the jury could have found the following facts were established at trial. In June 1991, Terrell Washington visited his cousin, Corey Harmon, in Indio, California. During that visit, Washington and Harmon visited a building where Washington obtained cocaine from a drug supplier, Willie Blackstone. Washington encouraged Harmon to start shipping cocaine to him in St. Louis. Harmon agreed. Under Washington's direction, Harmon repeatedly obtained cocaine from Blackstone and mailed it to St. Louis. Harmon ultimately obtained at least forty kilograms from Blackstone and another forty kilograms from another drug supplier.[2] For Harmon's help, Washington gave him currency and occasional expensive gifts, such as tennis shoes.
 
 
 3
 William Rice assisted Washington in several different ways throughout the conspiracy. On one occasion, police lawfully detained Rice and Andre Myles at the airport as they were heading to Indio. Police seized over $95,000 from the two men. Rice also supplied transportation for another courier, Givens, from the bus station and airport. At Washington's direction, Rice rented several beepers through a friend of his. Although Rice made the payments for these beepers, Washington may have controlled them. Rice filled out several of the packing slips used to ship currency to Harmon.
 
 
 4
 On August 10, 1991, Washington flew to Indio with Myles and Rice. Harmon met with Washington and other drug dealers Phillip Jones and Sharon Smith at the Super 8 Motel. Myles and Rice did not attend the meeting. Apparently, Washington and Jones had previously shared a cocaine supplier. In the interest of good business, Washington wanted Harmon to obtain drugs for Jones as well. After the meeting, Harmon obtained cocaine and heroin for Jones from Blackstone and mailed it to an address provided to him by Washington. For Washington's organizational and networking efforts, Jones "fronted" Washington one kilogram of cocaine. Washington's connection with Jones caused his business to improve.
 
 
 5
 Later, around September 20, 1991, Washington flew Harmon to St. Louis. Harmon met with Washington, Rice and others involved in the business. At a separate meeting with Jones, Jones told Harmon that he needed more cocaine. Harmon left St. Louis early to meet Jones's request.
 
 
 6
 When Jones was arrested after police intercepted a UPS parcel containing drugs, Washington contacted Harmon and told Harmon to change his pager number. Jones and his associates contacted Washington for financial help after the arrest. This help ultimately consisted of Washington sending two kilograms of cocaine and four ounces of heroin to one of Jones's associates.
 
 
 7
 On December 27, 1992, the police approached Washington as he was getting out of a rented car. Washington was the driver, and two other men were passengers in the car. Washington was unable to identify who had rented the car, and the rental agreement he produced had expired several weeks earlier. These discrepancies caused the officers to inquire further. The officers noticed an open gym bag in plain view in the car. One officer could see white powder residue in the bottom of the bag. After the men consented, the officers searched the car. A drug dog reacted positively to the gym bag. The officers found hotel room keys in the car, but none of the occupants claimed the keys. The officers eventually searched those hotel rooms and located 1.3 kilograms of cocaine in one room and materials to wrap cocaine in the other.
 
 
 8
 After a federal investigation and jury trial, the three defendants were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 841(a) and 846. Rice was also convicted of interstate travel with the intent to carry on an unlawful activity in violation of 18 U.S.C. Sec. 1952. Washington was also convicted of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. Sec. 841(a).
 
 II. ANALYSIS
 
 9
 A. William Rice, a/k/a "Touche"
 
 1. Offense Level
 
 10
 Rice challenges both the substance and form of the district court's determinations regarding his offense level. First, Rice challenges the district court's substantive determination of his offense level based on his participation in the conspiracy. The district court attributed to him all of the drugs involved in the conspiracy, which resulted in an offense level of 36. Unless it is clearly erroneous, we will not reverse the district court's factual determination regarding the amount of drugs attributable to a particular defendant. United States v. Alexander, 982 F.2d 262, 267 (8th Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 2761, 129 L.Ed.2d 876 (1994).
 
 
 11
 The Sentencing Guidelines provide that a criminal defendant convicted of conspiracy can be held accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B). The district court must find "by a preponderance of the evidence that [the defendant's] activities were in furtherance of the conspiracy and were either known to [the defendant] or were reasonably foreseeable to him." United States v. Rogers, 982 F.2d 1241, 1246 (8th Cir.) (emphasis added), cert. denied, --- U.S. ----, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993). Relevant to a determination of reasonable foreseeability is whether or to what extent a defendant benefitted from his co-conspirator's activities. United States v. Jones, 965 F.2d 1507, 1517 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992), and cert. denied, --- U.S. ----, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992), and cert. denied, --- U.S. ----, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). An additional relevant factor is whether the defendant demonstrated a substantial level of commitment to the conspiracy. See, e.g., United States v. Smith, 49 F.3d 362, 366-67, (8th Cir.1995); United States v. Edwards, 945 F.2d 1387, 1393 (7th Cir.1991), cert. denied, 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).
 
 
 12
 After a careful review of the record, we affirm the district court's determination that the entire amount of cocaine in the conspiracy should be attributed to William Rice for sentencing purposes. Rice demonstrated a substantial level of commitment to the conspiracy. Rice accompanied Washington to California when Washington met with Jones. Thus, it was reasonably foreseeable to Rice that Washington would continue the conspiracy with Jones. The evidence showed that Rice was actively and directly involved in a number of drug transactions. Rice performed various favors for Washington, such as providing beepers. Rice knew or should have known that the beepers were being used for illegal activity. The government also introduced evidence showing that Rice filled out many of the packing slips used during the drug conspiracy. Even if he was unaware of the quantity of drugs obtained through the beepers and packing slips, any amount established was clearly foreseeable to him. See, e.g., United States v. De La Cruz, 996 F.2d 1307, 1314 (1st Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993). In view of all this evidence, we cannot find the district court's determination clearly erroneous.
 
 
 13
 Next, Rice also asserts that the district court's factual finding regarding his offense level was procedurally invalid because it was not sufficiently specific. The district court made this independent factual finding on Rice's offense level because Rice objected to the presentence report's recommendations on this issue. United States v. Bluske, 969 F.2d 609, 616 (8th Cir.1992).
 
 
 14
 We conclude that the court's finding was sufficiently specific. Before making its finding, the district court heard arguments from both parties and reviewed trial notes and exhibits. The court then determined that Rice "is in fact accountable for the conduct and the acts or omissions of others, because I believe from all of the information that I have, [that the acts and omissions of others were] in furtherance of the jointly-undertaken criminal activity, and [that the acts and omissions of others were] reasonably foreseeable in connection with that criminal activity." Rice's Sentencing Transcript at 23-24; see U.S.S.G. Sec. 1B1.3 cmt. 2. We do not consider this finding inadequate.[3]
 
 2. Minor Participant Status
 
 15
 Rice asserts that the district court improperly refused to grant him a two-point reduction as a minor participant in the conspiracy. We conclude that the court did not err by refusing to grant such a reduction.
 
 
 16
 Section 3B1.2(b) of the Sentencing Guidelines reduces the defendant's offense level by two points if the defendant is a minor participant in the criminal activity. Application Note 3 explains that a minor participant "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." We review the district court's determination of the defendant's participation under the clearly erroneous standard. United States v. Hall, 949 F.2d 247, 249 (8th Cir.1991).
 
 
 17
 A defendant's level of culpability governs the appropriateness of minor participant status. Id. Rice asserts that he is entitled to the minor participant status reduction because he served mainly as a courier, and was therefore less culpable. This assertion is dubious. Rice's duties in the conspiracy exceeded that of a courier. Rice accompanied Washington to California for meetings. Rice rented several beepers in another's name, paid the bills, and presumably gave the beepers to Washington. The government presented evidence that Rice addressed many packing labels used during the drug conspiracy. Even if we accept Rice's assertion that he served mainly as a courier, courier status does not automatically entitle Rice to a reduction. United States v. Williams, 890 F.2d 102, 104 (8th Cir.1989) (per curiam). The large quantity of drugs with which Rice had direct involvement supports the district court's refusal to grant minor participant status. See, e.g., United States v. Garvey, 905 F.2d 1144, 1146 (8th Cir.1990) (per curiam).
 
 B. Willie Chavez Blackstone
 
 18
 Blackstone contends that the district court erroneously attributed to him the entire amount of cocaine in the conspiracy, and assigned him a base offense level of 36. Level 36 is used for the distribution of more than 50 but less than 150 kilograms of cocaine. We find that the court did not err in assigning Blackstone this base offense level. The government presented voluminous evidence demonstrating Blackstone's direct involvement with over fifty kilograms of cocaine. Harmon testified that Blackstone supplied him with approximately forty kilograms of cocaine. Givens, another informant, testified that she met with Blackstone several times. The meetings with Givens ultimately culminated in at least seven kilograms being distributed by Blackstone. Finally, the DEA performed a sweep of several individuals to whom Blackstone regularly supplied cocaine. The sweep netted $95,000. This amount of currency translates into at least six kilograms of cocaine. Thus, the quantity of drugs clearly attributable to Blackstone comes within level 36. In addition, the other supplier's cocaine may also have been foreseeable and properly attributable to Blackstone. See, e.g., Smith, 49 F.3d at 366-67; Edwards, 945 F.2d at 1393. In short, the district court did not err by assigning Blackstone a base offense level of 36.
 
 C. Terrell Washington
 1. Offense Level
 
 19
 Washington asserts that the court erroneously calculated his adjusted offense level under the Sentencing Guidelines. The district court attributed all of the conspiracy's drugs to him, and assigned him a base offense level of 36. The court then increased his offense level for obstruction of justice and because Washington served as a leader/organizer of the conspiracy. A district court's determination of and adjustments to the offense level will not be reversed unless they are clearly erroneous. See Alexander, 982 F.2d at 267; United States v. Culver, 929 F.2d 389, 392 (8th Cir.1991).
 
 
 20
 We find that the court did not err in attributing all of the conspiracy's drugs to him. Washington claims that because he did not directly participate in Jones's enterprise, he should not be held liable for the drug amounts allegedly distributed by Jones. We disagree. As discussed previously, co-conspirators may be held accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B). Jones's activities were reasonably foreseeable to Washington. The lives of the two men were remarkably intertwined. Washington introduced Jones to Harmon so that Harmon would supply drugs to Jones. Jones "fronted" cocaine for Washington. Washington supplied Harmon an address for Harmon to ship cocaine to Jones. Even when both were working separately, they gave each other tips on how to be a more successful drug dealer (i.e., title a car in another's name). It was clearly foreseeable that this behavior would facilitate Jones's criminal enterprise. Thus, the district court's determination regarding the amount of drugs attributable to Washington is not clearly erroneous.
 
 
 21
 Washington also contends that the district court erroneously imposed a two-level increase for obstruction of justice. The basis for this increase is that Washington allegedly made threatening phone calls to the father of a major government witness, Harmon. At trial, a DEA agent testified that Harmon's father told him that Washington repeatedly phoned and threatened Harmon and his family. Harmon's father admitted reporting the frequency and content of these calls to a DEA agent. However, he said that the calls were not of a harassing nature. In view of the conflicting evidence, the district court made a credibility determination regarding the reliability of various witnesses and imposed the two-level increase for obstruction of justice. "Where there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous." See Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). As a result, we conclude that the district court's determination was not clearly erroneous.
 
 
 22
 Finally, Washington asserts that the district court erroneously increased Washington's offense level as a leader of the drug conspiracy. The Sentencing Guidelines permit a four-level increase for a defendant who is an organizer of criminal activity that "involved five or more participants or was otherwise extensive." U.S.S.G. Sec. 3B1.1(a). The government presented sufficient evidence of Washington's leadership role. For example, the testimony established that Washington decided what quantity of drugs to order, the shipping destination of such drugs, and which individual would serve as a courier for a particular trip. Given his leadership in these and other areas, we cannot say that the district court's decision was clearly erroneous.
 
 2. Evidentiary Issues
 
 23
 Washington also makes several challenges to his convictions. He claims that the district court improperly admitted certain evidence, causing reversible error. This allegedly improper evidence includes (1) a snapshot of Washington holding a large amount of currency and (2) testimony regarding Washington's girlfriend's abortion. We note that a snapshot of Washington holding a large sum of currency has questionable relevancy to his drug dealing habits. But see United States v. Matra, 841 F.2d 837, 841 (8th Cir.1988) (possession of large sum of currency helped support a conviction for intent to distribute). However, even if the district court abused its discretion in admitting the currency snapshot, we find that such abuse is harmless error. "An evidentiary error amounts to harmless error if, after viewing the entire record, the reviewing court determines that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict." United States v. Mitchell, 31 F.3d 628, 632 (8th Cir.1994). There is considerable independent evidence to support Washington's conviction.
 
 
 24
 Washington also asserts that the court improperly permitted testimony involving Washington's girlfriend's abortion. As Washington failed to properly object to admission of this evidence at trial, we will review only for plain error. United States v. Whitetail, 956 F.2d 857, 861 (8th Cir.1992). Under this standard, reversal is warranted only if " 'admission of the challenged testimony undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice.' " Id. (quoting United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)) (alterations in the original). Washington contends that admitting the abortion evidence constitutes plain error because abortion is a highly charged, emotional issue which has a likelihood of inciting the jury. We disagree. While abortion is a controversial issue, and admitting the abortion evidence may have slightly prejudiced the defendant, we cannot find the error substantial enough to undermine the fundamental fairness of the trial as a whole. The abortion testimony represented only a small part of the entire case. The government presented extensive evidence supporting Washington's considerable involvement in the conspiracy. Thus, admission of the abortion testimony does not rise to the level of plain error.
 
 3. Miscellaneous
 
 25
 Washington also challenges the sufficiency of the evidence for his conviction on Count IV of the conspiracy. This count charged Washington with the offense of aiding and abetting possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a). The facts forming the basis for Count IV involve the December 27, 1992, stop of Washington and two other men. Washington submits that there was insufficient evidence to find that he had any knowledge of or connection with the cocaine found in the hotel room.
 
 
 26
 In reviewing challenges to sufficiency of the evidence, we view the evidence in a light most favorable to the government and determine whether a rational jury could have found the defendant guilty. United States v. Johnson, 18 F.3d 641, 645 (8th Cir.1994). The government receives "the benefit of all reasonable inferences which may logically be drawn" from the evidence. Id. (citation omitted).
 
 
 27
 After a careful review of the record, we find that there is sufficient evidence to convict Washington of the offense charged. This circuit has previously held that constructive possession of drugs is "sufficient to satisfy the element of knowing possession under Sec. 841(a)(1)." United States v. Brett, 872 F.2d 1365, 1369 (8th Cir.), cert. denied, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Washington maintained control of and was driving the car in which the officers found the hotel keys. Thus, he is properly considered a holder of the keys. A "holder of [a] key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein." Id. at n. 3. As a holder of the hotel keys, Washington had constructive possession of the 1.3 kilograms of cocaine found in the hotel room. In view of this involvement, we cannot find the evidence insufficient to convict Washington of this crime.
 
 
 28
 We have considered Washington's other argument and hold that it is without merit.
 
 III. CONCLUSION
 
 29
 For the foregoing reasons, we affirm the district court's judgment.
 
 
 
 *
 The HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Of these eighty kilograms, Harmon sent fifty-six kilograms to Washington and the remaining twenty-four kilograms to Jones, another participant in the conspiracy
 
 
 [3]
 Blackstone and Washington also contend that the district court made insufficient factual findings when assessing their offense levels. We find their contentions similarly unpersuasive. See Blackstone's Sentencing Transcript at 8-9; Washington's Sentencing Transcript at 20-25