# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1643

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * Northern District of Iowa. |
| Heath Leon Ayers, also known as | * |
| "He-Dog," | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 97-2189

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Roderick Williams, | * |
| | * |
| Defendant - Appellant. | * |
| | * |

_____

Submitted: October 21, 1997

Filed:   March 6, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

In these consolidated appeals, we consider Heath Leon Ayers' and Roderick Williams' challenges to their respective sentences imposed for conspiracy to distribute crack cocaine. Ayers claims the district court[1] erred in determining the quantity of drugs attributable to him for sentencing purposes and in failing to grant "judicial" immunity to a witness at his sentencing hearing. Williams claims the district court erred in enhancing his sentence under the United States Sentencing Guidelines for being a manager or supervisor of criminal activity involving five or more participants, see U.S. Sentencing Guidelines Manual § 3B1.1 (1995), and in failing to grant him a three-level decrease in his base offense level for acceptance of responsibility pursuant to Guidelines § 3E1.1(b)(2). We affirm both sentences.

I.

A grand jury charged Ayers and Williams, along with seven other codefendants, with one count of conspiracy to distribute and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (1994). In the same indictment, Ayers and Williams were also each charged with three other felony counts relating to the distribution of crack cocaine.[2] Ayers signed a plea agreement on

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

[2]Ayers was charged with three counts of distributing crack cocaine, in violation of 21 U.S.C. § 841. Williams was charged with one count of the use of a communication facility in causing and facilitating the distribution of crack cocaine, in violation of 21 U.S.C. § 843(b), one count of distributing and aiding and abetting the distribution of crack cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and one count of possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841.

December 2, 1996, the first day of trial, and then pleaded guilty on December 4, 1996, to conspiracy to distribute crack cocaine. The government then dismissed the remaining drug counts against Ayers as provided by the plea agreement. Williams pleaded guilty to conspiracy to distribute crack cocaine on December 2, 1996, the first day of trial, and the government dismissed the remaining charges against Williams pursuant to the plea agreement.

At Ayers' lengthy sentencing hearing held over the course of three days, the parties presented evidence of the drug quantities involved in the conspiracy and Ayers' role in the offense. The district court determined that at least 500 grams but less than 1.5 kilograms of crack cocaine were attributable to Ayers. The court reached this result by totaling specific quantities of crack it found attributable to Ayers. First, the court relied on Ayers' admission that he received 85 grams of crack from codefendant David Johnson. Next, the court credited the testimony of special agent Greg Brugman that Ayers participated in three controlled buys of crack involving 23.3 grams, 23.1 grams, and 26.6 grams, respectively. The court attributed another 49 grams based on codefendant Luther Batte's testimony that he purchased 7 one-quarter-ounce packages of crack from Ayers. Although Eric Moss testified that he saw Ayers obtain 5 one-ounce packages of crack on two separate occasions from codefendant Gerald Leach, the court conservatively estimated that Ayers was responsible for 5 ounces, or 140 grams, of crack based on these transactions. Antiono Watkins stated he bought 17.71 grams of crack from Ayers. Antonio Lucas testified he saw Ayers sell 7 grams of crack. Derrick Ware, whose testimony the district court discounted based on his lack of credibility, stated that he observed Ayers sell packages of crack ranging in size from one-quarter-ounce to one-ounce five times per week for nine months, a total of roughly 1,260 grams of crack. Based on the collective testimony of Ware, Watkins, and Lucas,

the court found there was at least another 155 grams of crack attributable to Ayers, putting the total quantity above 500 grams but below 1.5 kilograms. See USSG § 2D1.1(c). After determining that the sentencing range was between 262 months and 327 months, the district court sentenced Ayers to 262 months' imprisonment.

Williams admitted during his plea hearing that he was involved in a conspiracy to distribute crack cocaine with Gerald Leach, Luther Batte, Lester Batte, David Johnson, Eric Moss, and Christopher Cungtion. At Williams' sentencing hearing, Officer Douglas Larison of the Cedar Rapids Police Department testified that Williams and codefendant Gerald Leach were the leaders of the crack cocaine distribution organization in Cedar Rapids, Iowa. Larison stated that Williams was the source that supplied crack cocaine to the organization. Williams admitted that on numerous occasions he traveled to Chicago, or directed someone to go to Chicago for him, to obtain crack cocaine for the conspiracy. Codefendant David Johnson testified that he became involved in drug trafficking through Williams. Johnson also stated that he obtained the crack he sold from Williams and that Williams directed to whom and for what price the crack was to be sold.

The district court determined that Williams was a manager or supervisor of criminal activity involving five or more participants and thus subject to a three-level enhancement under USSG § 3B1.1(b). The court also found that Williams had accepted responsibility for his offense and decreased his offense level by two levels pursuant to USSG § 3E1.1(a). The court denied Williams the additional third level decrease authorized by USSG § 3E1.1(b)(2). After determining that the sentencing range was 360 months to life, the district court sentenced Williams to 360 months' imprisonment.

II.

We first consider Ayers' appeal. Ayers challenges the district court's drug quantity findings, claiming the court arbitrarily assessed the amount of crack cocaine attributable to him. We review the district court's determination of a drug quantity for sentencing purposes for clear error. 18 U.S.C. § 3742(e) (1994); United States v. Payne, 119 F.3d 637, 645 (8th Cir.), cert. denied, 118 S. Ct. 454 (1997).

Our review of the record convinces us that the district court did not commit clear error in determining the amount of crack cocaine attributable to Ayers. Contrary to Ayers' assertion, the district court did not arbitrarily determine the amount of crack attributable to Ayers. The district court heard extensive testimony and made factual findings regarding drug quantities based on its assessment of the evidence. As we explained earlier, the district court calculated the amount of crack cocaine attributable to Ayers by totaling the amounts from various drug transactions described by witnesses, discounting some testimony based on its credibility findings, and approximating certain amounts based on all the evidence. It was proper for the district court to reasonably estimate the total drug quantities based on its assessment of the evidence. See USSG § 2D1.1, comment. (n.12); United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994) (court "may estimate total drug quantity based on evidence that reasonably supports a factual finding"). We see no reason to disturb the district court's drug quantity determination.

Ayers next claims that the district court should have granted "judicial" immunity to a witness, Toyon Valentine, who asserted his Fifth Amendment right not to testify when called by Ayers at the sentencing hearing. Ayers proffered that Valentine would have testified that Ayers was not involved in certain drug transactions that a government witness claimed were attributable to Ayers. Ayers argues that the district court's refusal to grant immunity to Valentine violated Ayers' rights to compulsory process under the Sixth Amendment and due process under the Fourteenth Amendment.

-5-

We reject this argument. "The district court did not have the authority to grant [Valentine] immunity because this court has consistently refused to recognize the concept of judicial immunity." United States v. Stewart, 122 F.3d 625, 627 (8th Cir. 1997) (citing United States v. Warfield, 97 F.3d 1014, 1020 (8th Cir. 1996), cert. denied, 117 S. Ct. 1119 (1997)); see also United States v. Dierling, 131 F.3d 722, 732-33 (8th Cir. 1997) (declining to recognize authority of court to grant immunity to a witness); United States v. Robaina, 39 F.3d 858, 863 (8th Cir.1994) (same); United States v. Capozzi, 883 F.2d 608, 613-14 (8th Cir. 1989) (same), cert. denied, 495 U.S. 918 (1990); United States v. Doddington, 822 F.2d 818, 821 (8th Cir. 1987) (same); United States v. Hardrich, 707 F.2d 992, 994 (8th Cir.) (same), cert. denied, 464 U.S. 991 (1983). The district court properly refused to grant Valentine immunity.

                                III.

    We next consider Williams' appeal. Williams first claims that the district court erred in enhancing his sentence by three levels based on its finding that he was a manager or supervisor in a criminal activity involving more than five participants. See USSG § 3B1.1(b). The district court's determination of a participant's role in the offense is a factual finding that we review for clear error. United States v. Flores, 73 F.3d 826, 835 (8th Cir.), cert. denied, 116 S. Ct. 2568 (1996).

    Our review of the record leads us to conclude that the district court did not commit clear error in determining that Williams was a manager or supervisor of five or more participants in the crack cocaine conspiracy. First, it is clear from the record that the court did not err in finding that the criminal activity involved five or more participants. At his plea hearing, Williams admitted to being involved in a conspiracy to distribute crack cocaine involving six other individuals. Counting his own involvement there were seven. Second, the court properly found that Williams exercised such control over others in the criminal organization to easily qualify as a manager or supervisor. The record clearly supports this determination. Williams set

                                -6-

the price of the crack sold by coconspirator David Johnson.  See USSG §
3B1.1, comment. (n.4) (factor in determining whether defendant is a manager
or supervisor includes "degree of control and authority exercised over
others").  Williams also determined to whom Johnson would sell the crack.
See id.  Williams was the source of crack for the Cedar Rapids conspiracy
and could therefore control the amount of crack sold by the conspirators.
Williams also recruited David Johnson to come to Cedar Rapids to sell drugs
for the conspiracy.  See id. (factor in determining whether defendant is
a manager or supervisor includes "the recruitment of accomplices").

Williams next argues that the district court erred in failing to grant
him a three-level decrease in his sentence for acceptance of
responsibility.  See USSG § 3E1.1(b).  We give "great deference" to a
district court's finding of whether a defendant has accepted responsibility
for his offense and will reverse only for clear error.  United States v.
Thompson, 60 F.3d 514, 517 (8th Cir. 1995); USSG § 3E1.1, comment. (n.5).
The district court granted Williams a two-level decrease for acceptance of
responsibility pursuant to USSG § 3E1.1(a), but declined to grant him the
additional one-level decrease authorized by USSG § 3E1.1(b)(2).  Williams
claims the court erred in failing to grant him this additional decrease.

Section 3E1.1(b)(2) provides an additional one-level decrease to a
defendant who: (1) has accepted responsibility for his offense under §
3E1.1(a); (2) has an offense level greater than 16; and (3) has, "by timely
notifying authorities of his intention to enter a plea of guilty, . . .
permitt[ed] the government to avoid preparing for trial and permitt[ed] the
court to allocate its resources efficiently."  Williams met the first two
requirements, but the district court ruled the third element was lacking.
The commentary to § 3E1.1 explains that "to qualify under subsection
(b)(2), the defendant must have notified authorities of his intention to
enter a plea of guilty at a sufficiently early point in the process so that
the government may avoid preparing for trial and the court may schedule its
calendar efficiently."  USSG § 3E1.1, comment. (n.6).  Williams did not
plead guilty until the morning of his first day of trial.  By this time the

government had prepared for trial, a jury was waiting to serve, and the district court had set aside two weeks on its docket for the trial. We easily conclude that the district court did not err in denying Williams an additional one-level decrease in his adjusted offense level under § 3E1.1. See Thompson, 60 F.3d at 517 (denying decrease under § 3E1.1(b)(2) where defendant did not give notice of his intent to plead guilty until government had "essentially already completed its preparation for trial"); United States v. McQuay, 7 F.3d 800, 803 (8th Cir. 1993) (denying decrease under § 3E1.1(b)(2) where defendant notified the government of his intention to plead on the day before his second trial).

IV.

We have considered and rejected all of Ayers' and Williams' arguments challenging their sentences. Accordingly, we affirm the judgments of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.