# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2600

_____

United States of America,                    *
                                             *
      Appellee,                          *
                                             *
   v.                                        *
                                             *
Demetrius Brown, also known as                *
Pondo, also known as Darius Dixon,            *
also known as Antoine Deonte Moore,           *
                                             *
      Appellant.                        *

_____                    Appeals from the United States
                                District Court for the
No. 97-2997                     District of Minnesota.

_____

United States of America,                    *
                                             *
      Appellee,                          *
                                             *
   v.                                        *
                                             *
Carlos Laron Hewitt, also known as            *
Lo, also known as Laron Stable,               *
also known as Laron Smith, also               *
known as Laron Stewart,                       *
                                             *
      Appellant.                        *

_____

No. 97-3093
_____

United States of America,             *
                                         *
        Appellee,           *
                                         *
    v.                    *
                                       *
Michael Lynn Flowers,       *
                                       *
        Appellant.         *

_____

Submitted: March 10, 1998

Filed: July 7, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.
_____

WOLLMAN, Circuit Judge.

Carlos Laron Hewitt and Michael Lynn Flowers appeal from their sentences imposed in district court[2] subsequent to plea agreements entered on various drug-related offenses. Demetrius Brown appeals from both his conviction and sentence following a jury verdict on similar charges. We affirm.

_____

[1] The HONORABLE JOSEPH H. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

[2] The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

# I.

In early 1994, a street gang, self-described as "The Detroit Boys," began to take over much of the crack cocaine trade in south Minneapolis, Minnesota. The gang was known for a high level of violence and for its *modus operandi* of using duct tape to restrain and silence victims before assaulting or murdering them. In addition to being violent, the Detroit Boys were a well-organized and highly profitable criminal venture. At the height of its activity, the gang was importing at least one kilogram of powder cocaine per week from sources in Los Angeles, Oakland, and Houston, converting it to crack, and selling the drug through its network of street dealers and crack houses.

Hewitt and Brown sat atop the gang's stratified leadership. Hewitt managed the finances and coordinated all aspects of drug distribution, overseeing in particular the purchase of cocaine from out-of-state sources. Brown was Hewitt's partner and right-hand man. He was involved most heavily in sales, managing the gang's many lieutenants and the workers in its crack houses. Flowers was the gang's primary source of cocaine in Los Angeles. In late 1994, police initiated an investigation of the Detroit Boys. On June 19, 1996, Hewitt, Brown, and Flowers, together with eight other defendants,[3] were charged in a thirteen-count superseding indictment.

---

[3]James Horton, Bridgette Stewart, Kimberly Deveroax Flowers, Earl Fleming, Christopher Taylor, Jermain Morrow, Tonya Frost, and Christopher Williams. All of these defendants pled guilty to various drug-related offenses, with the exception of Williams, who was convicted by a jury of conspiracy to distribute cocaine and use of a telephone in connection with a felony drug offense.

## II.    Carlos Laron Hewitt[4]

Hewitt was charged with: (1) one count of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base (crack) in violation of 21 U.S.C. §§ 846 and 841(a)(1) (1995); (2) two counts of aiding and abetting possession with intent to distribute cocaine and crack (998 and 340 grams); (3) five counts of using a telephone in connection with a felony drug offense in violation of 21 U.S.C. § 843(b); (4) one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (5) one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I).  On the day his trial was scheduled to begin, he entered into an agreement to plead guilty to all but the firearm charge, which the government then voluntarily dismissed.

Hewitt was sentenced pursuant to the U.S. Sentencing Guidelines Manual (U.S.S.G.) incorporating the amendments effective November 1, 1996.  In imposing sentence, the district court essentially adopted the factual findings and application of the Guidelines set forth in Hewitt's presentence report.  Hewitt's convictions were separated into two groups of closely related offenses pursuant to Part D of Chapter Three (Multiple Counts).  Regarding the first group (conspiracy, possession with intent to distribute, and use of a telephone in connection with a felony drug offense), Hewitt's base offense level was calculated according to the drug quantity table set forth in section 2D1.1(c).  See U.S.S.G. § 2D1.1(a)(3).  Hewitt was held accountable for all drugs proved to have been distributed during the conspiracy, which amounted to at least 5.4 kilograms of powder cocaine.  He was also connected to at least 1.07 kilograms of crack.  The two substances were then converted to their equivalent quantities in marijuana pursuant to the drug equivalency tables.  See U.S.S.G. § 2D1.1 cmt. (n.10).  This calculation resulted in equivalency amounts of 200 kilograms

---

[4]Hewitt is also known as "Lo," "Laron Stable," "Laron Smith," and "Laron Stewart."

(cocaine) and 21,400 kilograms (crack) for a total equivalent quantity of 21,600 kilograms of marijuana.[5]  The attribution of at least 10,000 but less than 30,000 kilograms of marijuana results in a base offense level of 36.

As a result of the finding that he had possessed a firearm in connection with his crimes, Hewitt's base offense level was increased by two pursuant to section 2D1.1(b)(1).  In addition, he was found to have been a leader of a criminal activity sufficiently extensive to warrant a four-level increase pursuant to section 3B1.1(a) (Aggravating Role), bringing his adjusted offense level to 42.[6]  Finally, he received a two-level downward adjustment pursuant to section 3E1.1(a) (Acceptance of Responsibility).  Thus, with a total offense level of 40 and a criminal history category of IV,[7] he faced a sentencing range of 360 months to life imprisonment.  The district court sentenced him to terms of 420, 48, and 240 months to be served concurrently, five years of supervised release, and a $650 special assessment.

Hewitt raises four arguments in his appeal.  Each involves a challenge to the court's application of the Guidelines based on its factual findings, which we will not disturb absent clear error.  See United States v. Ngo, 132 F.3d 1231, 1233 (8th Cir.

---

[5]Because 5.4 kilograms of cocaine is the equivalent of 1,080 kilograms of marijuana rather than only 200, the total equivalent quantity of marijuana should have been 22,480 kilograms.  That error, however, had no effect on Hewitt's base offense level, which would be 36 in either circumstance.

[6]The court calculated Hewitt's adjusted offense level for the second group of his convictions (money laundering) to be 28, and thus ultimately used the level calculated for the first grouping, which was the higher of the two.

[7]Hewitt's criminal history included convictions in Michigan for larceny and armed robbery.  His armed robbery conviction resulted from an incident in which he confronted a woman and her infant child just after they had exited a bank.  Hewitt demanded her money, then placed a revolver to the child's head, cocked it, and warned, "or the baby dies."  He escaped with $179 before being arrested.

1997) (standard of review for appeal from district court's denial of acceptance of responsibility reduction); United States v. Moss, 138 F.3d 742, 745 (8th Cir. 1998) (drug quantity determination); United States v. Rodgers, 122 F.3d 1129, 1133 (8th Cir. 1997), cert. denied, 118 S. Ct. 721 (1998) (enhancement for leadership role); United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997) (enhancement for possession of dangerous weapon).

Hewitt first argues that the court erred in granting him a two-level reduction for acceptance of responsibility rather than the three to which he asserts he was entitled. Section 3E1.1(a) of the Guidelines provides that a defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to a two-level decrease in his base offense level. When a defendant has met this requirement and has an offense level greater than 16, section 3E1.1(b)(2) allows for an additional one-level decrease where he has also "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." See also United States v. Hawkins, 78 F.3d 348, 352 (8th Cir.), cert. denied, 117 S. Ct. 126 (1996). Although he concedes that a plea of guilty entered on the day of trial normally would not entitle a defendant to the supplemental one-level reduction, Hewitt argues that because the government was also preparing similar cases involving substantially the same facts against his co-defendants, Brown and Williams, his lengthy delay in pleading did not cause the government to significantly squander its resources preparing for trial. He also argues that even his last-minute plea furthered the court's efficient allocation of resources by causing the trial to be shorter in length.

We reject each of these arguments. The presence of an additional defendant against whom a case must be proved by no means suggests that the government's efforts to prepare that case for trial are somehow duplicative of efforts to prepare similar cases against co-defendants, particularly where, as here, that defendant is the purported leader of a multiple-actor criminal conspiracy. The charges against Hewitt

-6-

were more numerous and substantial than those against Brown or Williams and involved several transactions and occurrences in which they took no direct part. The government was forced to proceed, up until the very morning of trial, as though it would be required to prove Hewitt's guilt beyond reasonable doubt on no less than ten separate counts. Without question, such preparation consumed substantial time, energy, and resources of the government. See United States v. Ayers, 138 F.3d 360, 364 (8th Cir. 1998).

Similarly, Hewitt's eleventh-hour plea did little to promote efficient allocation of the court's resources, since the court, like the government, had to conduct its affairs based on the assumption that his case would be tried and to schedule its docket accordingly. See id. That docket indicates that the court was forced to consider twelve motions from Hewitt prior to his decision to change his plea. Thus, the court committed no error when it declined to increase the section 3E1.1 reduction from two levels to three. See, e.g., id.; United States v. Chatman, 119 F.3d 1335, 1342 (8th Cir.), cert. denied, 118 S. Ct. 434 (1997); United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995); U.S.S.G. § 3E1.1 cmt. (n.6).

Next, Hewitt contends that the district court erred in holding him accountable for all of the drugs proved to have been involved in the conspiracy. Although he concedes that the quantities of 998.4 grams and 227 grams of powder cocaine seized by authorities on March 25 and April 21, 1996, respectively, were properly attributed to him, Hewitt disputes the court's consideration of any other quantities of powder or crack cocaine.

A defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of that conspiracy. See United States v. Tauil-Hernandez, 88 F.3d 576, 579 (8th Cir. 1996), cert. denied, 117 S. Ct. 1258 (1997); United States v. Rice, 49 F.3d 378, 382 (8th Cir. 1995); U.S.S.G. § 1B1.3(a)(1)(B). Thus, in a drug conspiracy, the district

court may consider amounts from drug transactions in which the defendant was not directly involved, provided that those other dealings were part of the same course of conduct or scheme. See United States v. Bieri, 21 F.3d 811, 817 (8th Cir. 1994). Before a quantity of drugs may be attributed to a particular defendant, the sentencing court is required to find by a preponderance of the evidence that the transaction or activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him. See Rice, 49 F.3d at 382. Factors relevant to foreseeability include whether the defendant benefited from his co-conspirator's activities and whether he demonstrated a substantial level of commitment to the conspiracy. See id. at 382-83. The court may rely on any evidence, "including drug prices and organizational capabilities to approximate total drug quantities beyond the amount of drugs actually seized." United States v. Padilla-Pena, 129 F.3d 457, 467-68 (8th Cir. 1997), cert. denied, 66 U.S.L.W. 3772 (June 1, 1998); see also U.S.S.G. § 2D1.1 cmt. (n.12).

We find no error in the court's drug quantity determination. If anything, the court was conservative in its findings. The evidence was more than sufficient to establish that each considered quantity was tied to the conspiracy entered into by Hewitt and the Detroit Boys to profit from the distribution of illegal narcotics. Each was either directly connected or imminently foreseeable to Hewitt, and each would surely have resulted in his profit had the conspiracy not been detected and foiled.

Hewitt also argues that the court erred in finding that he qualified for a four-level enhancement for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," rather than the two-level increase he suggests would have been more appropriate. U.S.S.G. § 3B1.1(a)-(c). Factors to be considered when determining whether a defendant played a leadership role include: (1) exercise of decision making authority; (2) nature of participation in the offense; (3) recruitment of accomplices; (4) claimed rights to a larger share in the fruits of the crime; (5) degree of participation in planning or organizing the offense; (6) nature

and scope of illegal activity; and (7) degree of control and authority exercised over others.  See U.S.S.G. § 3B1.1 cmt. (n.4); United States v. Garin, 103 F.3d 687, 689 (8th Cir. 1996), cert. denied, 117 S. Ct. 1323 (1997).

Although we have broadly construed the scope of the "leader" or "organizer" element of section 3B1.1, see United States v. Mayer, 130 F.3d 338, 340 (8th Cir. 1997), no expansive reading is required in this case.  Each of the factors listed above weighs in favor of a four-level enhancement.  As the author, administrator, and overlord of a sophisticated, interstate conspiracy to distribute illegal narcotics, Hewitt was not only eligible for such an increase, he is precisely the sort of "leader" to which the enhancement was intended to apply.

Last, Hewitt objects to his two-level enhancement for having possessed a dangerous weapon in connection with the conspiracy.  See U.S.S.G. § 2D1.1(b)(1).  To support such an enhancement, the government must prove by a preponderance of the evidence that such a weapon was present and that it was not clearly improbable that it had some nexus to the charged offense.  See United States v. Macklin, 104 F.3d 1046, 1048 & n.4 (8th Cir.), cert. denied, 118 S. Ct. 229 (1997); U.S.S.G. § 2D1.1 cmt. (n.3).  Thus, the enhancement is implicated whenever the weapon is possessed in connection with the underlying crime, without regard to actual use.  It is sufficient to establish constructive possession, which encompasses "ownership, dominion, or control over the item, or dominion over the premises" where the weapon was discovered.  McCracken, 110 F.3d at 541.

The record reflects that Hewitt possessed a number of firearms at the various houses at which he and Brown cooked and sold crack cocaine, at least seven of which weapons (two Ruger pistols, four other handguns, and one assault rifle) were seized. "Just as weapons are kept at the ready to protect military installations against potential enemy attack, so too may weapons be kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal transactions."  United States v. Matra, 841 F.2d

837, 842 (8th Cir. 1988). On one occasion, Hewitt pistol-whipped one of his lieutenants as punishment for making "dummies," or imitation crack, and passing it off to unsuspecting buyers. That incident in itself is enough to justify the two-level enhancement.

In sum, we find no merit in any of Hewitt's challenges to his sentence.

## III.    Demetrius Brown[8]

Brown was charged with: (1) one count of conspiracy to distribute and possess with intent to distribute cocaine and crack; and (2) one count of aiding and abetting possession with intent to distribute cocaine (998 grams). A jury convicted him of both charges. Brown was held accountable only for drugs proved to have been distributed up until March 25, 1996 (the date on which he began serving a prison sentence in Michigan), amounting to 1,168.4 grams of powder cocaine and 743.5 grams of crack.[9] The substances were then converted to their marijuana equivalents, resulting in amounts of 233.68 kilograms (cocaine) and 14,870 kilograms (crack) for a total equivalent quantity of 15,103.68 kilograms of marijuana. The court determined Brown's base offense level to be 36. See U.S.S.G. § 2D1.1(c)(2). Next, the court found that Brown had been a leader of the conspiracy and increased his offense level by four. See U.S.S.G. § 3B1.1(a). With a total offense level of 40 and a criminal history category

---

[8]Brown's true name is Darius Duane Dixson. He is also known as "Pondo" and "Antoine Deonte Moore."

[9]The court did not adopt *in toto* the findings set forth in the pre-sentence report regarding the quantity of crack to be attributed to Brown. The court determined that he should not be held accountable for the 42.4 grams seized on March 4, 1996. Thus, this total reflects only: 23.5 grams seized on June 14, 1995; 704.5 grams seized on December 20, 1995; and 15.5 grams seized on March 14, 1996.

of III,[10] Brown faced a sentencing range of 360 months to life in prison. The district court sentenced him to the minimum term of 360 months on each count to be served concurrently, ten years of supervised release, and a $100 special assessment.

Brown raises a number of issues on appeal.[11] He contends that he is entitled to a new trial because the district court admitted into evidence his 1991 felony conviction in Michigan for cocaine trafficking. The government argued, and the court agreed, that the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence (Other crimes, wrongs, or acts). To be admissible under this rule, Brown's prior drug trafficking must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) greater in probative value than prejudicial effect; and (4) similar in kind and close in time to a charged offense. See United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995). We review the admission of such evidence for abuse of discretion, and we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts. See id.

Brown's primary assertion on this point is that the court's decision to admit the evidence was arbitrary because it did not specifically set forth how each factor detailed above weighed toward its admission. We disagree. As the district court stated, Brown's prior cocaine trafficking conviction in Michigan was relevant to the issues of Brown's knowledge, intent, lack of mistake or accident, and opportunity to commit the charged crime of conspiracy to distribute cocaine, particularly since the current conspiracy was alleged to have had its genesis in Michigan. See id.; United States v. Miller, 974 F.2d 953, 960 (8th Cir. 1992); United States v. Williams, 895 F.2d 1202,

---

[10]Brown's criminal history included two prior drug-related convictions in Michigan.

[11]We grant Brown's motion for leave to file a supplemental *pro se* brief.

1205-06 (8th Cir. 1990). Brown's primary defense at trial was that he was associating with Hewitt and other members of the Detroit Boys for social reasons only and that he did not realize they were involved in a cocaine distribution scheme. His prior conviction, proved beyond reasonable doubt, did much to dispel his assertions of naivete. Its probative value outweighed any prejudicial effect both because it was so factually similar to the current charges and because the district court gave a careful cautionary instruction to the jury. Thus, we conclude that the court did not abuse its discretion in admitting the prior conviction under Rule 404(b).

Brown contests his sentence on several grounds. The government had planned to call as a witness one of the police officers who arrested Brown and seized 704.5 grams of crack from his motel room in Houston, Texas, in December of 1995. As the time to do so approached, however, the government learned that this witness was still in Texas, as his flight had been delayed due to an ice storm. Brown claims that at this point he and the government entered into a "quasi-agreement," whereby if the government agreed not to call the officer at all, Brown would agree not to cross-examine or recall Horton, the government's primary witness against him.[12] As a result, Brown's connection to the Houston cocaine was apparently never established at trial. Thus, Brown argues, the court improperly included the Houston cocaine when determining his base offense level. He also suggests that consideration of Houston cocaine was improper because the court had stated that its findings would be based "on the things that it learned during the trial and found that were proven at the trial." Brown Sentencing Transcript (B.S.T.) at 2.[13]

---

[12]The government vigorously disputes that any such deal was ever discussed or struck.

[13]The court also stated, however, that it would also rely on any evidence that "has been provided fairly to the Court." B.S.T. at 4-5.

The facts relied upon by the sentencing court need only be proved by a preponderance of the evidence. See United States v. Whatley, 133 F.3d 601, 606 (8th Cir. 1998). We will not disturb a district court's drug quantity determination unless we are of the definite and firm conviction that the court erred. See id. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. 3661; see also U.S.S.G. § 6A1.3(a) (sentencing court may consider relevant information without regard to admissibility at trial provided it has sufficient indicia of reliability to support probable accuracy). "We believe that it is enough if a district court simply makes the factual findings necessary to support the relevant sentencing adjustments." Whatley, 133 F.3d at 606. Brown's connection to the cocaine seized from his Houston motel room, concurrent with his arrest, was clearly established during pretrial testimony. The district court appropriately found that Brown had been associated with this cocaine and therefore properly considered that quantity of drugs when it sentenced him.

Next, Brown contends that because the jury was not asked to make a specific finding regarding the nature of the drug or drugs involved in the conspiracy, the court should have assumed at sentencing that the jury must have concluded that only powder cocaine was involved, a result that would have produced a more lenient sentence. In support of his argument, Brown cites United States v. Owens, 904 F.2d 411, 413-15 (8th Cir. 1990). There, we stated that where "the establishment of [a defendant's] base offense level required a determination of which drug the conspiracy involved," and "the Sentencing Guidelines provide disparate sentencing ranges" for the substances alleged to be involved, the court should employ "a special verdict form to permit the jury to indicate which substance it found to be the object of the conspiracy." Id. at 415. We did so because we concluded that, "[b]y instructing the jury on an 'either/or' basis with respect to the two substances and by failing to enable the jury to indicate which of the substances it found the conspiracy to have involved, the district court elicited an ambiguous verdict of guilty with two possible interpretations." Id. We held that the

-13-

district court erred in sentencing a defendant "based on the alternative which yielded a higher sentencing range." Id.; see also United States v. Wiggins, 104 F.3d 174, 177-78 (8th Cir. 1997); United States v. Baker, 16 F.3d 854, 857-58 (8th Cir. 1994); United States v. Watts, 950 F.2d 508, 514-15 (8th Cir. 1991).

Brown's argument is foreclosed by the Supreme Court's recent decision in Edwards v. United States, 118 S. Ct. 1475, 1477-78 (1998), which effectively overruled Owens. In Edwards, as here, the defendant was charged with conspiring to distribute both powder and crack cocaine in violation of sections 841 and 846 of Title 21. See id. at 1476-77. "The jury returned a general verdict of guilty. And the judge imposed sentences based on his finding that each petitioner's illegal conduct had involved both cocaine and crack." Id. at 1477.

The Court rejected the argument that the lower court erred in imposing a sentence based upon its finding that the conspiracy involved crack, despite a verdict that was technically ambiguous on that precise matter. Instead, it held that the Sentencing Guidelines instruct the judge, and not the jury, "to determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable -- and then to impose a sentence that varies depending upon amount and kind." Id. Thus, "regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the 'controlled substances' at issue -- and how much of those substances -- consisted of cocaine, crack, or both." Id. That is precisely what the district court did in this case.

Brown also protests the use of his prior felony drug trafficking conviction to enhance his statutory minimum sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851(a)(1)-(2). Section 851(a)(2) provides: "An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed."

Brown contends that in this provision the phrase, "the offense for which such increased punishment may be imposed," refers to a defendant's prior drug conviction (the offense that constituted the basis for enhancement), rather than the offense with which a defendant is currently charged. In <u>United States v. Trevino-Rodriguez</u>, however, we rejected a construction of section 851(a)(2) identical to that now proposed by Brown. 994 F.2d 533, 536 (8th Cir. 1993) (waiver of or prosecution by indictment for prior offense was not necessary to base imposition of 20-year mandatory minimum sentence for subsequent drug trafficking offense on that prior offense, as such requirement imposed by section 851(a)(2) of Title 21 applied only to instant offense). Accordingly, Brown's argument fails.

We have reviewed the remaining arguments presented in Brown's *pro se* supplemental brief and find them to be without merit.

## IV.    Michael Lynn Flowers

Flowers was charged with: (1) one count of conspiracy to distribute and possess with intent to distribute cocaine and crack; and (2) two counts of distribution of cocaine (998 and 340 grams). Early on, Flowers entered into an agreement with the government to plead guilty to the conspiracy charge. The government then voluntarily dismissed the other counts. The plea agreement contained the following provision:

> The defendant understands that by pleading guilty he waives all right to a trial on the question of his guilt or innocence. In the event the court accepts the plea agreement and sentences the defendant at or below a total offense level of 33, the defendant agrees to waive his right to appeal or to contest, directly or collaterally, his sentence on any ground, unless the court should impose a sentence in violation of the law apart from the Sentencing Guidelines.

Plea Agreement and Sentencing Stipulations at 5. At the changes of plea hearing convened for Flowers and his wife, Kimberly Deveroax Flowers, the following colloquy occurred:

THE COURT: Now, I also understand that if I sentence you at or below level 33, there will not be an appeal, and you are waiving your right to appeal. Do you understand that?

FLOWERS: Yes.

THE COURT: All right. And have you discussed that with him and with his lawyer, or have you discussed that with his lawyer, [addressing Flowers's counsel at hearing]?

[FLOWERS'S COUNSEL]: Yes.

. . . .

THE COURT: You also have a right under the law to appeal your sentence under particular circumstances. Believe it or not I am reading you something that somebody wrote out like it's supposed to be able to be easily handled and understood. Only a pack of lawyers could write stuff like this. I want to tell you what it says, though, all right? You do have a right to appeal your sentence if you think I sentence you unlawfully, okay? So if I don't sentence you according to law you got a right to take an appeal from that. Now, you can waive those rights as part of a plea agreement, and you have entered into a plea agreement that does waive those kinds of things. You know about that?

FLOWERS: Yes.

THE COURT: What I'm saying is, you're giving up, if I sentence you low enough, you're giving up your rights to appeal even though you know that you do have a right otherwise to appeal. True?

FLOWERS: Yes.

Changes of Plea Transcript at 20-22.

With a total offense level of 33 and a criminal history category of II,[14] Flowers faced a guideline range of 151 to 188 months in prison. The district court sentenced him to the minimum term of 151 months, five years of supervised release, and a $100 special assessment. Although the district court sentenced him within the range that the agreement prescribed, Flowers, despite his pledge not to do so, now appeals from his sentence.

We will enforce a defendant's waiver of the right to appeal from his sentence so long it was "the result of a knowing and voluntary decision." United States v. Michelsen, 141 F.3d 867, 871 (8th Cir. 1998). Our review is *de novo*. See id. We conclude from this record that Flowers knowingly, voluntarily, and unequivocally waived his appellate rights.

## V.

Hewitt's sentence is affirmed. Brown's conviction and sentence are affirmed. Flowers's appeal from his sentence is dismissed.

---

[14]Flowers's criminal history included convictions in California for tampering with a vehicle and voluntary manslaughter. His manslaughter conviction resulted from an incident in which he and two other individuals beat a man they suspected had stolen some jewelry from one of them, ripped his clothes from his body, bound him, and were dragging him across a parking lot when the man broke free. As the victim was attempting to escape by climbing an 8-foot chain link fence, Flowers shot him twice in the back. Flowers served approximately five years in prison for this offense.

A true copy.

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.